**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

SOUTHEASTERN CONSULTING &
DEVELOPMENT COMPANY, INC.,

      Debtor.

Case No. 11-40398-LMK

Chapter 11 Case

_____/

## PLAN OF REORGANIZATION

## JULY 24, 2012

**BERGER SINGERMAN**
Attorneys for Debtor
Brian G. Rich
125 South Gadsden Street, Suite 300
Tallahassee, FL  32301
Telephone:  (850) 561-3010
Facsimile:  (850) 561-3013
Email:  *brich@bergersingerman.com*

Southeastern Consulting & Development Company, Inc., the Debtor in these proceedings

(the "Debtor"), pursuant to 11 U.S.C. §1121, proposes the following Plan of Reorganization:

ARTICLE 1    Definitions

As used in this Plan, the following terms shall have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined unless the context requires otherwise.

### 1.01    Actions

All actions that a trustee or debtor-in-possession is empowered to bring pursuant to 11 U.S.C. Sections 542-553 of the Code (as hereinafter defined), and any other cause of action, lawsuit, adversary proceeding, contested matter, claim objection, or right of the Debtor or the Estate against any Person.

### 1.02    Administrative Claim

A Claim for payment of an administrative expense under Section 503 of the Code that is entitled to priority under Section 507(a)(1) of the Code and any fees or charges assessed against the Estate pursuant to 28 U.S.C. 1930.

### 1.03    Administrative Claimant

The holder of an Administrative Claim.

### 1.04    Allowed Amount

With respect to a Claim, (a) the amount of a Claim that was listed in the Debtor's Schedules (as originally filed in the Case) as not disputed, contingent or unliquidated, if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, or (b) if a holder of a Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules:  (i) the amount stated in such proof of claim or in the Schedules if no objection to such proof of claim or amount listed in the Schedules has been interposed within the applicable period of limitation fixed by the Code or Rules, or as otherwise fixed by the Court, or (ii) such amount as shall be fixed by an order of the Court which has become a Final Order, if an objection has been interposed within the applicable period of limitation fixed by the Code, the Rules, or the Court, or (c) with respect to a Fee Request, such amount as shall be fixed by an order of the Court which has become a Final Order.  In no event shall the Allowed Amount of any Priority Claim or Unsecured Claim include interest accrued on such Claim after the Filing Date.

1.05    Allowed Claim

Any Claim which is not a Disputed Claim for which an Allowed Amount has been finally determined in such or any portion thereof, Allowed Amount.  Any such claim shall be an Allowed Claim as to the undisputed portion or amount.  The Allowed Amount of each Secured Claim shall not include, pursuant to Section 506(b) of the Code, interest on such Claim, and any reasonable fees, costs, or charges provided for under the agreement(s) under which such Claim arose incurred as a result of any breach or default, act or omission occurring through the Effective Date or by reason of the Plan, Confirmation or Substantial Consummation.

1.06    Allowed Interest.

Any Interest which has not been timely disputed, or if timely disputed, which has been allowed by order of the Court which has become a Final Order.

1.07    Article

One of the numbered Articles of the Plan.

1.08    Assets

All of the right, title and interest of the Debtor in and to property of any type or nature.

1.09    Assumed Contract

An Executory Contract (as modified or amended pursuant to the Plan, prior order of the Court or by agreement of the parties) that is assumed by the Debtor pursuant to the Plan or by order of the Court.

1.10    Business Day

A day other than a Saturday, a Sunday or a day on which commercial banks in Tallahassee, Florida are authorized or required to close.

1.11    Case

This Chapter 11 Case No. 11-40398-LMK pending in the United States Bankruptcy Court for the Northern District of Florida.

1.12    Claim

(a)    A right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed or contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or

unsecured; (c) without limiting the generality of the foregoing, all Administrative Claims, Priority Claims, Secured Claims and Unsecured Claims.

1.13    Class

A group of Claims or Interests classified together pursuant to Article 2 of the Plan.

1.14    Class 1

The Claim of holders of property tax claims related to the Phase I Lots Collateral, Phase II Lots Collateral, Undeveloped Lots Collateral and the rest of the real property assets of the Debtor, as described, classified and treated in Section 2.01 of the Plan.

1.15    Class 2

The Bond Debt Assessment of the Heritage Plantation Community Development District, (or any successor of such claims), as described, classified and treated in Section 2.02 of the Plan.

1.16    Class 3

The Allowed Secured Claim of HP Land, LLC., as successor to BB & T (or any successor of such claims), as described, classified and treated in Section 2.03 of the Plan.

1.17    Class 4

The Allowed Secured Claim of Trustmark National Bank (or any successor of such claims), as described, classified and treated in Section 2.04 of the Plan.

1.18    Class 5

The Allowed Judgment and Deficiency Claims (or any successor of such claims) against the Debtor as described, classified and listed in Section 2.05 of the Plan.

1.19    Class 6

The Allowed Unsecured Claim of the Heritage Plantation Homeowner's Association, Inc. (or any successor of such claims) against the Debtor as described, classified and listed in Section 2.06 of the Plan.

1.20    Class 7

The Allowed Unsecured Claim of Auburn Water System, Inc. (or any successor of such claims) against the Debtor as described, classified and listed in Section 2.07 of the Plan.

1.21    Class 8

The Unsecured Trade Claims of the Debtor (or any successor of such claims) as described, classified and listed in Section 2.08 of the Plan.

1.22    Class 9

The Unsecured Trade Claims of the Debtor (or any successor of such claims) with claim amounts less than $10,000.00 as described, classified and listed in Section 2.09 of the Plan.

1.23    Class 10

The Allowed Equity Interests of the Debtor as described, classified and treated in Section 2.10 of the Plan.

1.24    Code

The Bankruptcy Code, 11 U.S.C. Section 101 et. seq.

1.25    Confirmation

The entry by the Court of the Confirmation Order.

1.26    Confirmation Date

The date on which the Clerk of the Court enters the Confirmation Order on the docket.

1.27    Confirmation Hearing

A hearing held by the Court on confirmation of the Plan pursuant to Section 1128 of the Code.

1.28    Confirmation Order

The order entered by the Court confirming the Plan, which shall contain such provisions as the Proponent desires and shall otherwise be in form and substance satisfactory to the Proponent.

1.29    Court

The United States Bankruptcy Court, Northern District of Florida, including any Bankruptcy Judge thereof and any court having competent jurisdiction to hear appeals from the Bankruptcy Judges thereof.

1.30    Creditor

Any Person holding a Claim or Interest, including Administrative Claimants and Claims of the kind specified in Sections 502(b), 502(h) and 502(i) of the Code, and such Person's heirs, successors, assigns, executors and personal representatives.

1.31    Debtor or Debtor in Possession

SOUTHEASTERN CONSULTING & DEVELOPMENT COMPANY, INC.   Any reference in the Plan to the "Debtor" shall also include the Debtor in its capacity as debtor in possession in the Case, and vice versa.

1.32    Disclosure Statement

The Disclosure Statement filed by the Proponent in connection with the Plan and approved by the Court for submission to Creditors as the same may be amended.

1.33    Disputed Amount

With respect to a particular Disputed Claim, that amount which is equal to the difference, if any, between the Face Amount of such Claim and the amount, if any, of such Claim which the party objecting thereto concedes.

1.34    Disputed Claim

Any Claim for which an Allowed Amount has not yet been determined and with respect to which an objection has been interposed on or prior to the Confirmation Date or such other date as may be fixed by the Court.

1.35    Effective Date

The tenth day after the Confirmation Order becomes final.

1.36    Estate

The estate created in the Case pursuant to Section 541 of the Code.

1.37    Executory Contract

A contract or unexpired lease to which Debtor is a party and that is executory within the meaning of Section 365 of the Code.

1.38    Face Amount

With respect to a particular Claim, (a) if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, the amount of such Claim that was listed in the Schedules (as

originally filed in the Case) as not disputed, contingent or unliquidated; or (b) if the holder of such Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, the amount stated in such proof of claim, or (c) with respect to a Fee Request, the net amount to which the applicant would be entitled if its application were to be granted in full.

1.39    Fee Request

An application or request for payment by the Estate of fees, compensation for services rendered or reimbursement of expenses, pursuant to Rule 2016 of the Rules or other applicable provision of the Code or the Rules.

1.40    Filing Date

May 16, 2011, the date the Debtor filed its Chapter 11 petition with the Court.

1.41    Final Order

An order or judgment of the Court as entered on the docket that has not been reversed, stayed, modified or amended, and respecting which the time to appeal, petition for certiorari or seek reargument, review or rehearing has expired and as to which no appeal, reargument, petition for certiorari, review or rehearing is pending or as to which any right to appeal, reargue, petition for certiorari or seek review or rehearing has been waived in writing in a manner satisfactory to the Proponent, or, if any appeal, reargument, petition for certiorari, review or rehearing thereof has been denied, the time to take any further appeal or to seek certiorari or further rehearing, review of reargument has expired.

If any provision of the Plan requires the entry of a Final Order as a condition to the occurrence or performance of an act, Proponents may jointly waive such requirement.

1.42    Lien

A charge against or interest in any item of Property of the Estate to secure payment of a debt or performance of an obligation.

1.43    Ordinary Course Administrative Claims

Administrative Claims for the provision of goods or services that are incurred by the Debtor in the ordinary course of business.

1.44    Person

Any individual, sole proprietorship, partnership (general or limited), joint venture, trust, unincorporated organization, association, corporation, institution, entity or government (whether federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body, political subdivision or department thereof).

1.45    Plan

This Plan of Reorganization in the present form or as it may be modified, amended or supplemented from time to time.

1.46    Priority Claim

A Claim (other than an Administrative Claim) that is entitled to priority under Section 507 of the Code.

1.47    Priority Tax Claim

A Claim (other than an Administrative Claim) that is entitled to priority under Section 507(a)(8) of the Code.

1.48    Property

The Debtor's real property and business assets.

1.49    Pro Rata

Proportionately, so that the ratio of the amount of consideration distributed on account of a particular Allowed Claim to the Allowed Amount of such Claim is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims of the Class in which the particular Claim is included to the amount of all Allowed Claims of that Class.  Whenever a Disputed Claim has not been finally resolved, an appropriate reserve for payment of such Disputed Claim shall be established so that there will be sufficient monies available to make a Pro Rata distribution to the holder of such Disputed Claim upon final resolution of the dispute.

1.50    Property of the Estate

The property defined in Section 541 of the Code and any other property right or interest of the Debtor.

1.51    Rejected Contract

An Executory Contract that is rejected at any time during the Case or pursuant to Section 3.07 of the Plan.

1.52    Rejection Claim

A Claim arising under Section 502(g) of the Code in its Allowed Amount.

1.53    Rules

The Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure and/or the Local Rules of the Court.

1.54    Rules of Construction and Interpretation

The following rules of construction shall be applicable for all purposes of the Plan unless the context clearly requires otherwise:

a)      The terms "include", "including" and similar terms shall be construed as if followed by the phrase "without being limited to".

b)      Words of masculine, feminine or neuter gender shall mean and include the correlative words of the other genders, and words importing the singular number shall mean and include the plural number, and vice versa.

c)      All article, section and exhibit or appendix captions are used for convenience and reference only and in no way define, limit or describe the scope or intent of, on in any way affect, any such article, section, exhibit or appendix.

1.55    Schedules

The schedules of assets and liabilities originally filed by the Debtor with the Court and not as the same may be amended from time to time.

1.56    Section

A numbered subsection of any Article of the Plan (for example, this numbered subsection of Article 1 of the Plan would be referred to as Section 1.56).

1.57    Secured Claim

A Claim secured by a lien on property in which the Estate has an interest or that is subject to set-off under Section 553 of the Code to the extent of the value of the interest attributable to such Claim in the Estate's interest in such property or to the extent of the amount subject to set-off.

1.58    Secured Creditor

The holder of a Secured Claim.

1.59    Substantial Consummation

Following the occurrence of Confirmation, the date of the first distribution to any one or more of the creditors.

1.60    Unsecured Claim

A Claim other than a Secured Claim, a Priority Claim or an Administrative Claim.

1.61    Unsecured Creditor

The holder of an Unsecured Claim.

ARTICLE 2    Classification, Treatment and Impairment of Claims and Interests

2.01    Class I - Priority Property Tax Claims

(a)    Description.    Class I is comprised of the holders of property tax claims, whether in the name of Okaloosa County or a holder of property tax certificates issued by Okaloosa County.  The aggregate amount of such claims is approximately $875,805.89 based on the Proof of Claim filed by Okaloosa County.

(b)    Treatment.  In full satisfaction of the Class I Claim,

(a)    the Debtor shall convey to the District the System Assets on the Effective Date subject to the confirmation of the Plan for consideration in the amount of $4.373 million (the "System Assets Purchase Price") payable in the form a note to be issued by the District to the Debtor in the amount of the System Assets Purchase Price (the "System Assets Note"), such System Assets Note to bear interest at the rate of 4% per annum and to be repaid from connection fees collected by the District from and at the time of the transfer of each of the Phase I Lots Collateral and Phase II Lots Collateral.  Each such connection fee shall be in the amount of $18,145.00.  The District shall have lien rights against the Phase I and Phase II Collateral to the extent of the System Assets Note (the "District Lien Rights"), which District Lien Rights shall be superior to any and all other liens and the connection fees shall be for the sole benefit of the Debtor expressly and limited to supporting the repayment of the System Assets Note; and either option (b) or (c), as follows:

(b)    The holder of the Allowed Priority Property Tax Claim shall have its "Class I Collateral", comprised of the Phase I Lots Collateral and the Phase II Lots Collateral, returned to it subject to the District Lien Rights against each of the 241 lots that comprise the Class II Collateral but otherwise free and clear of any other encumbrances whatsoever all upon confirmation of the Plan, whereby the Class I Collateral shall be conveyed at the time of final confirmation of the Plan into a special purpose entity owned by the Class I Claimants prorata (the "SPE") pursuant and subject to the following:

(i) the Bankruptcy Code,
(ii) the recorded Declaration of Covenants and Restrictions of the HOA,
(iii) the Development Agreement, and
(iv)  a marketing agreement between the SPE and the Debtor restricting the bulk sale of the Class I Collateral for a five (5) year period following such conveyance (the "Marketing Agreement"), and which Marketing Agreement shall provide for the Debtor to provide future services to the SPE and in exchange therefor receive a marketing fee of

twenty-five (25%) percent of the proceeds from the sale of the Class I Collateral less normal and customary brokerage commissions and closing costs, whether the lots are sold individually by lot or in the aggregate

or

(c) as otherwise authorized by the Bankruptcy Code or agreed to by the Debtor or the Reorganized Debtor and each such Holder prior to the Confirmation Date.

Each such satisfaction shall occur on the later of the Effective Date or the date each respective Class I Claim is allowed by a Final Order and shall be in full satisfaction, release and discharge of such Class I Claim. Class I is Impaired.  As a result, each Holder of a Class I Claim is entitled to vote to accept or reject the Plan.

      (c)    <u>Impairment.</u>  Class I is impaired.

2.02    Class II - District Bondholders Bond Debt Assessment Lien

      (a)    <u>Description.</u>  Class II is comprised of the Bond Debt Assessment of the District, which secured the Bond obligations owing by the District to its Bondholders.  The aggregate amount of such claims is approximately $13,209,946.90 based on the Proof of Claim filed by the District.

      (b)    <u>Treatment.</u>  In full satisfaction of the Class I Claim, the holder of the Allowed Class II Secured Claim shall have its Class II Secured Claim restructured, as follows:

The Debtor proposes to restructure the Bond Debt Assessments principally through an exchange of the developer related to both the existing Series A and Series B 2006 Bonds (collectively, the "Series 2006 Bonds") for one (1) new series, ie the Series 2012 Bonds.  The principal amount of the District's Series 2006 Bonds to be exchanged and thereby redeemed in full is $10,520,000.00.

The principal amount of Series 2012 Bonds to be issued by the District in exchange for the Series 2006 Bonds is $1,665,024.00.  The Series 2012 Bonds shall mature fifteen (15) years following their issuance and carry an interest rate of 3%.

The principal amount of the Series 2012 Bonds was determined as follows:

| | |
|---|---|
| ➢ Outstanding 2006 Bonds | $11,360,000.00 |
| ➢ Incomplete construction Credit | ($1,490,000.00) |
| ➢ Principal Reduction of 2006 Bonds | ($9,000,000.00) |
| ➢ Unpaid Interest | $1,362,521.00 |
| ➢ Accrued Interest (05/01/12 to 11/01/12) | $272,503.00 |
| ➢ (Less) Series 2006 Bonds to remain outstanding | ($840,000.00) |
| Total Series 2012 | $1,665,024.00 |

As summarized in the above table, in connection with the proposed restructure of the

District Claims under the Plan, the Debtor proposes that the District shall make various adjustments to the principal amount outstanding on the Series 2006 Bonds in order to arrive at the principal amount of the Series 2012 Bonds to be issued by the District.  Such adjustments include a principal reduction amount, a reduction for incomplete construction obligations of the District and an increase in the principal balance thereof by the unpaid and accrued interest on such Claims. The term "unpaid interest" shall mean interest that has not been paid by the Debtor on the District Claims through the Filing Date. The term "accrued interest" shall mean interest on the District Claims that will accrue from and after the Filing Date up to and including the Effective Date. The Debtor's Plan provides for an interest forbearance period, namely the period from the Effective Date through the date of the first payment on the Series 2012 Bonds, which is two years from the Effective Date.

Based on a principal amount of the Series 2012 Bonds to be issued by the District, the principal of such bonds to be allocated to each lot in Phase I and Phase II of the Development, excluding lots which have an allocated amount of the Series 2006 Bonds attached to them, is $6,908.81.  The corresponding annual assessment on each lot to be used to retire the Series 2012 Bonds upon payment to the District thereof shall be $460.58.  Accordingly, the District shall receive annual assessment revenues, excluding interest, in the amount of $111,001.59, before approximate collection costs of 6%.

As of the date hereof, the Debtor understands that none of the bondholders who own or control the underlying Bonds issued by the District have consented to the proposed restructure of the District Claims. Moreover, if such bondholders do not consent to a restructuring of the District Claims, then such bondholders, or the Indenture Trustee for such bondholders, may seek to enforce their rights against the District and take the position that the District remains in default under its obligations to the Indenture Trustee.

        (c)      Impairment.  Class II is impaired.

2.03    Class III - HP Land, LLC as successor to Branch Banking & Trust's Secured Claim

        (a)      Description.  Class III is comprised of the claim of HP Land, LLC., as the successor to the secured claim of Branch Banking & Trust (the "Class II Secured Claim").  The amount of the Class II Secured Claim is $16,155,895.00 based on the Proof of Claim filed by Branch Banking & Trust.

        (b)      Treatment.  In full and final satisfaction of the Class II Secured Claim, HP Land and the Debtor have agreed (the "Settlement Agreement"), subject to confirmation of the Plan, to modify and combine the existing mortgages on its collateral (the "Collateral"), as follows:

    1.      HP Land shall record a new mortgage:

        a.      The term shall be for 10 years (the "Term").
        b.      No interest shall accrue and no payments shall be due during the Term.
        c.      There shall be a balloon payment due at end of the Term.

    d.     The Term shall commence from the Effective Date.

    e.     HP Land's mortgage (the "Mortgage") shall encompass the 280 acres of developable property that are part of the Undeveloped Property, as more fully detailed on Exhibit A of the Settlement Agreement between the Debtor and HP Land, a hearing upon which Settlement Agreement is scheduled for June 14, 2012 (defined therein as, the "Developable Property").

    f.     The Mortgage shall contain the following release provisions for the Developable Property (the "Modified Collateral"):

        i.     HPL shall receive the greater of (i) $12,000 per acre; or (ii) the value determined by the following formula: the extrapolated selling price per acre less $33,000 (representing the development costs), multiplied by 50%. HPL shall agree to pro rata release for sales of less than one acre. HPL shall have the right of first refusal for the sales, evidenced by a recorded document in the public records of Okaloosa County, Florida. There shall also be a true-up of development costs to reflect the actual development costs in the release equation.

        ii.     Exhibit A attached hereto represents the land that is the developable acres and the legal description of the Modified Collateral, which is comprised of Sections A, B, C and D. Take-down shall be accomplished on a section by section basis and payment shall be based upon the number of acres in each section as more fully described in Exhibit A.

2.     The Debtor shall cause the Declaration to be amended so that HP Land shall not be liable for assessments in the event that HP Land forecloses on the Collateral by way of making HP Land a co-Declarant.

3.     HP Land shall agree to support and shall affirmatively support the Debtor's Plan of Reorganization that contains the terms of the Settlement Agreement.

4.     The Parties shall agree to the form of a stay relief order to be submitted to the Bankruptcy Court, including provisions for events of default under the Mortgage, Debtor's conveyance to HP Land of clear title to 80 acres to the north of Heritage Plantations developable property (the legal description of which is attached to the Settlement Agreement as Exhibit B thereto), and modification of the Declaration in which HP Land will join as mortgagee. HP Land shall be entitled to full relief from the automatic stay to continue the foreclosure sale for the Collateral under the existing mortgages if the Debtor does not file its Disclosure Statement and a Plan that includes the terms set forth herein within 1 year from the date of this Settlement Agreement. HP Land shall be in default and not entitled to continue the foreclosure sale if it does not vote in favor of the Debtor's Plan.

5.      All property subject of the First, Second and Third Mortgage, excluding the Modified Collateral shall be excluded from the Mortgage and shall be released.

6.      The Parties shall work cooperatively on the form of the Mortgage and related documents.

7.      HP Land shall have the right to enter on the lands of the Debtor to harvest merchantable timber and vegetation, and on the platted lots, to clear lots of vegetation and trees in accordance with applicable covenants and contracts between the Parties.  Such activity benefits the Debtor's plans for development and is in the ordinary course of the Debtor's business as a subdivision developer

(c)      Impairment.  Class III is impaired.

2.04    Class IV - Trustmark National Bank Secured Claim

(a)      Description.   Trustmark National Bank's Class IV Secured Claim is comprised of its secured claim in the amount of $5,105,978.04.  There is no value in the collateral related to its Secured Claim, except for the Gatehouse, which for purposes of treatment under the Plan, is assigned a value of $74,000.00.

(b)      Treatment.  In full satisfaction of the Class IV Claim, the Debtor shall pay the full amount of such Allowed Class IV Secured Claim the value of the collateral in the amount of $74,034.00 within thirty (30) days of the Effective Date.

(c)      Impairment.  Class IV is impaired.

2.05    Class V - Judgment and Deficiency Claims

(a)      Description.  Class V is comprised of holders of judgment and deficiency claims against the Debtor (the "Class V Claims").  The aggregate amount of the Class V Claims is $28,462,095.91 based on the Proofs of Claim filed by the claimants in this Class V, as follows:

i.      Trustmark National Bank's Class V Claim in the aggregate amount of $7,924,406.12 is comprised of an unsecured claim in the amount of $198,212.84, an unsecured claim in the amount of $2,620,215.33 and a secured claim in the amount of $5,105,978.04.  There is no value available to Trustmark in the collateral related to its Secured Claim, except for the Gatehouse, which is therefore a part of this Class V;

ii.      Heritage Plantation Community Development District's Class V Claim is $19,586,325.81, comprised of two separate claims in the amounts of $380,509.81 and $19,305,816.00;

iii.      Deere Credit, Inc's. Class V Claim is $538,376.65; and

iv.      Florida First Bank's Class V Claim is $412,987.33.

(b)    Treatment.  In full satisfaction of the Class V Claim, at the election of the claimant's holding at least 66.67% of the value of such Class V Claims, the Class V Claims shall in the discretion of such claimants, be treated pursuant to one of the two treatments outlined below as Option A or Option B.  The Class V Claimants shall make the election in writing to the Debtor within thirty (30) days of the Effective Date or the Class IV Claims shall automatically be treated pursuant to Option B.

Option A:  The Debtor shall pay to each Class V Claimant an amount equal to one half of one percent (0.5%) percent (the "Class V Cash Payment") of their respective Class V Claims in full satisfaction of each such Class V Claim, such amount to be paid as follows:  5% of the Class V Cash Payment within thirty (30) days of the Effective Date; 5% of the Class V Cash Payment on or before the date that is 180 days from the first payment hereunder; 25% of the Class V Cash Payment on or before the date that is 180 days from the second payment hereunder and the balance within 360 days of the third payment hereunder.

Option B:  The Debtor to issue to each Class V Claimant an unsecured note in an amount equal to one (1%) of its claim (the "Class V Notes").  The Class V Notes shall not bear interest and shall be repaid from the sale of the Undeveloped Lots, through release payments on each such closing in the amount of $600.00 per lot.  The Class V Notes issued in connection with this Option B shall be unsecured and post-confirmation, shall subordinate to any financing related to the development of infrastructure or construction financing required by the Debtor to construct improvements on the Lots.

(c)    Impairment.  Class V is impaired.

2.06    Class VI - Heritage Plantation Homeowner's Association, Inc.'s Unsecured Claim

(a)    Description.  Class VI is comprised of the unsecured claims of the Heritage Plantation Homeowner's Association, Inc. (the "HOA") (the "Class VI Claim").  The amount of the Class VI Claim is undetermined at the time of the writing of this Disclosure Statement and is based on the Proof of Claim filed by the HOA.

(b)    Treatment.  In full satisfaction of this Class VI Claim, the Debtor shall on the Effective Date:

(i)    issue to the HOA an unsecured note of Two Hundred Thousand Dollars ($200,000.00) (the "HOA Note").  The HOA Note shall not bear interest and shall be repaid from the sale of Undeveloped Lots through release payments on each such closing in the amount of $400.00 per lot.  The HOA Note issued in connection with this Class V shall be unsecured and post-confirmation, shall subordinate to any development financing to prepare lots for sale and construction financing required by the Debtor to construct improvements on the Undeveloped Lots;

(ii)    convey to the HOA the Golf Course in exchange for the sum of $1 million (the "Golf Course Purchase Price") with the Golf Course Purchase Price payable by the HOA to the Debtor, as follows:

(1) a note and mortgage in the amount of $1 million, such mortgage only to be paid from capital contributions to the HOA from future lots closings with no interest thereupon, plus

(2) the HOA's promise to restore the Golf Course to playable condition;

(iii)    convey to the HOA the Gatehouse (the "Gatehouse") for an amount equal to the assessed value of the Gatehouse, or $74,034.00 (the "Gatehouse Purchase Price") payable, as follows:

(1) a note and mortgage in the amount of $74,034.00 (the "Gatehouse Mortgage"), such mortgage only to be paid from capital contributions to the HOA from future lots closings with no interest thereupon, plus

(2) the HOA's promise to restore the Gatehouse to useable condition

(c)    <u>Impairment.</u>  Class VI is impaired.

2.07    Class VII - Auburn Water System, Inc.'s Unsecured Claim

(a)    <u>Description.</u>  Class VII is comprised of the unsecured claims of Auburn Water System, Inc. ("Auburn") (the "Class VII Claim").  The amount of the Class VII Claim is $164,292.50 in connection with the unpaid maintenance bond for the Phase II potable water improvements to be conveyed to Auburn pursuant to the executory contract between Auburn and the Debtor.  As at the time of the writing of this Disclosure Statement, Auburn had not timely filed a Proof of Claim.

(b)    <u>Treatment.</u>  In full satisfaction of this Class VII Claim, the Debtor to issue to Auburn an unsecured note in an amount equal to $164,292.50 (the "Auburn Note").  The Auburn Note shall bear interest at the rate of four (4%)_ percent per annum on the outstanding balance with the Auburn Note amount to be paid from the operations of the Debtor over seven (7) years with equal annual principal reductions in arrears, commencing thirteen (13) months from the Effective Date.  The Auburn Note issued in connection with this Class VII Claim shall be unsecured and post-confirmation, shall be subordinate to any construction financing required by the Debtor to construct improvements on the Lots.

(c)    <u>Impairment.</u>  Class VII is impaired.

2.08    Class VIII -  Trade Claims

(a)    <u>Description.</u>  Class VIII is comprised of the unsecured trade claims of the Debtor with claim amounts in excess of $10,000.00 (the "Class VIII Claims").  The aggregate amount of the Class VI Claims is $188,028.46 based on the Debtor's Schedule F, as adjusted by such Proofs of Claim filed by the Class VI Claimants.

(b)    <u>Treatment.</u>  In full satisfaction of the Class VIII claims, the Debtor to issue to each Class VIII Claimant an unsecured note in an amount equal to twenty-five (25%) percent of its claim (the "Class VIII Notes").  The Class VIII Notes shall bear interest at the rate of four (4%) percent per annum on the outstanding balance with the Class VIII Notes amount to be paid from the operations of the Debtor over seven (7) years with equal annual principal reductions in arrears, commencing thirteen (13) months from the Effective Date.  The Class VIII Notes issued in connection with this Option B shall be unsecured and post-confirmation, shall be subordinate to any construction financing required by the Debtor to construct improvements on the Lots.

(c)    <u>Impairment.</u>  Class VIII is impaired.

2.09    Class IX -  Convenience Claims

(a)    <u>Description.</u>  Class IX is comprised of the unsecured trade claims of the Debtor with claim amounts less than $10,000.00 (the "Class IX Claims").  The aggregate amount of the Class IX Claims is $271,398.48 based on the Debtor's Schedule F, as adjusted by such Proofs of Claim filed by the Class IX Claimants.

(b)    <u>Treatment.</u>  In full satisfaction of the Class IX claims, the Debtor shall pay to each Class IX Claimant an amount equal to twenty-five (25%) percent (the "Class IX Cash Payment") of their respective Class IX Claims in full satisfaction of each such Class IX Claim, such amount to be paid as follows:  5% of the Class IX Cash Payment within thirty (30) days of the Effective Date; 5% of the Class IX Cash Payment on or before the date that is 180 days from the first payment hereunder; 25% of the Class IX Cash Payment on or before the date that is 180 days from the second payment hereunder and the balance within 360 days of the third payment hereunder.

(c)    <u>Impairment.</u>  Class IX is impaired.

2.10    Class X -  Equity Interests

(a)    <u>Description.</u>  Class X is comprised of the Equity Interests of the Debtor. Class X is represented by the 10,000 shares of the Debtor's pre-petition common stock owned by Riggs and Phoenix, which are forfeited.

(b)    <u>Treatment.</u>  Phoenix shall retain one hundred percent of the equity interests of Losowe Capital, Inc. ("Losowe"), following the merger of the Reorganized Debtor with Losowe, whereby Losowe shall be the surviving entity and succeed to all right, title and

interest of the assets of the Reorganized Debtor subject to the treatment of all of the Reorganized Debtor's Claims as set forth in the Disclosure Statement and the Plan.

      (c)      Impairment.  Class X is impaired.

2.11    Agreement to Less Favorable Treatment

Any Creditor may agree to less favorable treatment than is provided for in the Plan.  The obligations of the Debtor under this Plan may be prepaid in full or in part without penalty.

2.12    Satisfaction of Claims

The treatment of and the consideration received by the holders of the Claims and Interests pursuant to this Article 2 of the Plan shall be in full satisfaction, release and discharge of their respective Claims against, or Interests in, the Debtor and the Estate.

ARTICLE 3    Means For Implementation and Post-Confirmation Operations of the Reorganized Debtor

3.01    Revenue from Operations; Equity and Loans

The Plan will be implemented from the Reorganized Debtor's cash on hand, the sale of non-core assets of the Reorganized Debtor, revenue from the sale of the Phase I and Phase II lots, revenue from the sale of the Undeveloped Property, revenues from the repayment from the HOA of the mortgages on the Gatehouse and the Golf Course, the repayment from sewer tap fees collected by the District of the value of the Debtor's wastewater assets and the Irrigation System to be conveyed to the District, and equity contributions or loans from the Proponent and its affiliates.  The Debtor represents that this Plan of Reorganization provides fair value for all claims of creditors and is in the best interest of creditors.  The Liquidation Analysis contained in the Disclosure Statement and the projections annexed thereto support the proposed treatment of Allowed Claims pursuant to Article 2 of the Plan.

3.02    Continuation of Business.

In accordance with, and subject to, the provisions of the Plan, the Reorganized Debtor, shall continue to conduct the day-to-day operations of its business.

3.03    Initial Management of the Reorganized Debtor.

The Debtor contemplates continued management through Louis S. Weltman for the necessary operation of the Reorganized Debtor's business.  The Disclosure Statement discloses the identity of affiliations of post-confirmation members, together with all other information required by section 1129(a)(5) of the Bankruptcy Code.

3.04    Executive Compensation.

The Disclosure Statement discloses that the compensation being paid to the Reorganized Debtor's executive management shall remain consistent with compensation paid prior to the Effective Date.

3.05.    Causes of Action.

Except as otherwise provided in the Plan and Disclosure Statement, all Actions (including Avoidance Actions) shall automatically be retained and preserved and will revest in the Reorganized Debtor.  Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Reorganized Debtor shall retain and have the exclusive right to enforce and prosecute Actions against any Entity.

3.06    Fee Requests

All Persons entitled to make Fee Requests in the Case shall file their Final Fee Requests and cause such Fee Requests to be ruled on by the Court on or before the date of the Confirmation Hearing.

3.07    Executory Contracts

Any lease or executory contract not assumed by order of the Bankruptcy Court or by the terms of the Plan and Confirmation Order confirmed are rejected.  The Debtor shall assume all of the leases related to the Bella Rosa Units.

**Proofs of Claim for Rejected Agreements.  Unless otherwise provided by order of the Bankruptcy Court entered before the Confirmation Date, any Claim against the Debtor arising from the rejection of any executory contract or unexpired lease agreement under this Plan must be filed with the Bankruptcy Court within 30 days after the date the Order approving the rejection was entered or on the last date set by the Bankruptcy Court for other parties to file a Proof of Claim, whichever is longer.**

ARTICLE 4    Unclassified Claims and Disputed Claims and Distributions

4.01    Administrative Claims

Each holder of an Allowed Administrative Claim (including Allowed Administrative Claims of Professionals) shall be paid (a) an amount, in Cash, by the Reorganized Debtor equal to the Allowed Amount of its Administrative Claim, in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code, on the later of (i) the Effective Date, or as soon thereafter as reasonably practicable, or (ii) as soon as practicable after the date of a Final Order Allowing such Administrative Claim, (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Claim and the Debtor or the Reorganized Debtor, as the case may be or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

All Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Bankruptcy Case shall be paid by Reorganized Debtor (a) in the ordinary course of business in accordance with contract terms, (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Claim and the Debtor or the Reorganized Debtor, as the case may be, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

4.02    U.S. Trustee's Fees

All unpaid fees and charges assessed against the Debtor under Chapter 123 of title 28, United States Code, 28 U.S.C. §1911-1930, for any calendar quarter ending prior to the Effective Date shall be paid to the United States Trustee by the Reorganized Debtor by no later than thirty (30) days following the Effective Date.  At the time of such payment, the Reorganized Debtor shall provide to the United States Trustee an affidavit indicating the disbursements made by the Debtor for the relevant periods, if requested by the United States Trustee. Following the Effective Date, any fees required to be paid to the United States Trustee, pursuant to 28 U.S.C. §1930(a)(6), with respect to the Bankruptcy Cases shall be paid by the Reorganized Debtor, until the earlier of (i) the closing of the Bankruptcy Cases by the issuance of a Final Decree by the Bankruptcy Court, or (ii) the entry of an order by the Bankruptcy Court dismissing the Bankruptcy Cases or converting the Bankruptcy Cases to another chapter under the Bankruptcy Code.  Any such payment to the United States Trustee shall be in the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) based upon the applicable disbursements for the relevant period and shall be made within the time period set forth in 28 U.S.C. §1930(a)(6).  At the time of each such payment, the Reorganized Debtor shall provide to the United States Trustee an affidavit indicating the disbursements for the relevant period, if requested by the United States Trustee.

4.03    Priority Tax Claims

Each Holder of an Allowed Unsecured Priority Tax Claim shall receive from the Reorganized Debtor, on account of such Allowed Unsecured Priority Tax Claim, regular installment payments in Cash in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code commencing on the later of (i) the Effective Date or as soon thereafter as reasonably practicable, or (ii) as soon as reasonably practicable after the date of a Final Order Allowing such Unsecured Priority Tax Claim. Notwithstanding the above, each Holder of an Allowed Unsecured Priority Tax Claim may be paid under such other terms as may be agreed upon by both the Holder of such Allowed Unsecured Priority Tax Claim and the Debtor or the Reorganized Debtor, as the case may be.  The Reorganized Debtor shall have the right to prepay such Allowed Unsecured Priority Tax Claims at any time, in whole or in part, without penalty or premium.

4.04    Timing of Distribution.

Except as set forth in the Plan, the distribution of Property will be made to Holders of Allowed Claims and Allowed Interests in accordance with the Plan.  If a Claim is not an Allowed Claim as of the applicable, distributions will be made only if and when the Claim is Allowed.

4.05    Delivery of Distributions.

The Reorganized Debtor will make distributions to Holders of Allowed Claims and Interests at the addresses set forth on the Proofs of Claim, if any, filed by such Holders or at the last known addresses of such Holders.  If any such Holder's distribution is returned as undeliverable, no further distribution will be made to such Holder unless and until the Reorganized Debtor is notified of such Holder's then current address, at which time all missed distributions will be made to such Holder, without interest.

4.06    Cash Payments.

Cash payments to be made pursuant to this Plan shall be made by wire transfer or checks drawn on a domestic bank, at the option of the Reorganized Debtor.

4.07    Interest on Claims.

Unless otherwise specifically provided for in this Plan, the Confirmation Order, (or any documents in connection therewith) or required by applicable bankruptcy law, Post-Petition Date interest shall not accrue or be paid on Claims (other than Allowed Secured Claims), and no Holder of a Claim (other than Allowed Secured Claims) will be entitled to interest accruing on or after the Petition Date on any Claim.  Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a Final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

4.08    No De Minimus Distributions.

Other than in the Final Distribution, no payment of Cash in an amount of less than $100.00 shall be made on account of any Allowed Claim.  Such undistributed amount will instead be held in escrow and made as part of the Final Distribution, which will be paid to each creditor with an Allowed Claim, regardless of the amount of each dividend.

4.09    Failure to Negotiate Checks.

Checks issued in respect of distributions under this Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance.  Any funds returned by reason of non-negotiated checks shall be held by the Reorganized Debtor until such time as they qualify for Unclaimed Property, or if earlier, a request for reissuance is received by the Reorganized Debtor.  Requests for reissuance of any such check shall be made, in writing, directly to the Reorganized Debtor by the Holder of the Allowed Claim with respect to which the check originally was issued.  All Claims for which void checks were issued, as well as the underlying distributions, will be forever barred, as against the Debtor, the Estate, and its Assets, however, any Claimants holding Claims for which void checks were issued may still pursue such Claims against Unclaimed Property, as set forth in the following paragraph.

4.10    Compliance with Tax Requirements.

In connection with each distribution with respect to which the filing of an information return (such as an Internal Revenue Service Form 1099 or 1042) or withholding is required, the Reorganized Debtor shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution or effect any such withholding and deposit all moneys so withheld as required by law.  With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received by the Reorganized Debtor within thirty (30) days from the date of such request, the Reorganized Debtor may, at its option, withhold the amount required and distribute the balance to such Person or decline to make such distribution until the information is received.

4.11    No Payment or Distribution Pending Allowance.

All references to Claims and amounts of Claims refer to the amount of the Claim allowed by operation of law, Final Order of the Bankruptcy Court or this Plan.    Accordingly, notwithstanding any other provision in this Plan, no payment or distribution shall be made on account of or with respect to any Claim to the extent it is a Disputed Claim, unless and until the Disputed Claim becomes an Allowed Claim.  No partial distributions will be made while an Objection is pending to part or all of a Claim.

4.12    Disputed Distribution.

If any dispute arises as to the identity of a Holder of an Allowed Claim who is to receive any distribution, the Reorganized Debtor may, in lieu of making such distribution to such Holder, make such distribution (or any amount estimated pursuant to section 502(c) of the Bankruptcy Code) into a segregated account until the disposition thereof shall be determined by Final Order of the Bankruptcy Court (or other court of competent jurisdiction) or by written agreement among the interested parties to such dispute.

4.13    Estimation of Disputed Claims.

To effectuate distributions pursuant to this Plan and avoid undue delay in the administration of the Estate, the Reorganized Debtor shall have the right, at any time, to seek an order of the Bankruptcy Court, after notice and a hearing (which notice may be limited to the Holder of such Disputed Claim and which hearing may be held on an expedited basis), estimating a Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, irrespective of whether the Debtor or Reorganized Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such Objection.  All of these Objection and resolution procedures are cumulative and not necessarily exclusive of one another.  In addition to seeking estimation of Claims, the Reorganized Debtor may resolve or adjudicate any Disputed Claim in the manner in which the amount of such Claim and the rights of the Holder of such Claim would have been resolved or adjudicated if the Chapter 11 Case had not been commenced, subject only to the terms of this Plan.  Claims may be subsequently compromised, settled, withdrawn or resolved by the Reorganized Debtor, pursuant to this Plan.

4.14    Resolution of Disputed Claims.

Subject to the conditions set forth in this Plan, the Reorganized Debtor will have the right (a) within 90 days from the date of Confirmation to initiate and prosecute any additional Objections to Claims, (b) to request estimation of each such Claim, (c) to litigate any Objection to Final Order, (d) to settle or to compromise any Claim, or (e) to withdraw any Objection to any Claim (other than an Allowed Claim or a Claim that is deemed to be allowed pursuant to this Plan or a Final Order).

4.15    Distributions in Complete Satisfaction.

The distributions and rights provided under this Plan will be in complete satisfaction and release, effective as of the Effective Date, of all Claims against and Interests in the Debtor's Estate and all liens upon any Property of the Estate.  The Holders of liens satisfied and released under this Plan will execute and deliver, or cause to be executed and delivered, any and all documentation reasonably requested by the Reorganized Debtor evidencing the satisfaction, discharge and release of such liens.

ARTICLE 5    Effect of Confirmation

5.01    Terms Binding

Upon the Effective Date, all of the provisions of this Plan, including all appendices and other exhibits hereto, shall be binding on the Debtor, the Estate, all Creditors, and all other entities who are affected (or whose interests are affected) in any manner by the Plan.

5.02    Automatic Stay Provisions

The automatic stay provisions of Section 362 of the Bankruptcy Code shall remain in full force and effect until the Effective Date, provided, however, that such automatic stay shall remain in force as to Disputed Claims until a Final Order has been entered in respect thereof.

ARTICLE 6    Miscellaneous

6.01    Modifications to Plan Prior to Confirmation

At any time prior to the Confirmation Date, the Proponent may modify the Plan, but may not modify the Plan so that the Plan as modified fails to meet the requirements of Sections 1122 and 1123 of the Code.  A modified plan filed with the Court shall become the Plan.

6.02    Modifications to Plan After Confirmation

At any time after the Confirmation Date, and before Substantial Consummation, the Proponent may modify the Plan but may not modify the Plan so that the Plan as modified fails to meet the requirements of Sections 1122 and 1123 of the Code.  The Plan as modified under this

Section becomes the Plan only if the Court, after notice and a hearing, confirms such Plan, as modified, under Section 1129 of the Code.

6.03    Remedy of Defects

After the Effective Date, the Proponent may, with approval of the Court, and so long as it does not materially and adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan.

6.04    Jurisdiction of Bankruptcy Court

Except as is otherwise provided in the Confirmation Order, the Bankruptcy Court shall retain jurisdiction for the following purposes:

(a)    Classification of any Claim, reexamination of any Claim which has been allowed for purposes of voting, and determination of any objection filed to any Claim.  Failure to object to any Claim for the purpose of voting shall not be deemed to be a waiver of the right to object to the Claim in whole or in part.

(b)    Determination of all questions and disputes regarding the Plan, the Debtor or Property of the Estate and determination of all causes of action, controversies, disputes, or conflicts involving the Plan, any Creditor, the Debtor or Property of the Estate arising prior to or on the Effective Date whether or not subject to action pending as of the Confirmation Date including resolution of Disputed Claims.

(c)    Determination of all disputes arising after the Effective Date with respect to the interpretation of the Plan.

(d)    Determination of any Action.

(e)    Determination of any issue, violation, injunction, contempt, relief, or other proceeding as contemplated under Section 362 of the Bankruptcy Code.

(f)    Correction of any defect, curing of any omission of reconciliation of any inconsistency in the Plan or in the Confirmation Order as may be necessary or appropriate to carry out the purposes and intent of the Plan.

(g)    Modification of the Plan after the Confirmation Date pursuant to the provisions of the Plan, the Code and the Rules.

(h)    Interpretation of the Plan.

(i)    Entry of any order, including a mandatory injunction or restraining order, required to facilitate consummation of the Plan or to enable the Effective Date to occur; and reconsideration or vacation of the Confirmation Order in the event Substantial Consummation is rendered impossible.

(j)    Entry of a final decree closing the Case.

6.05    Withdrawal of the Plan.

The Debtor or Reorganized Debtor reserves the right, at any time prior to the Substantial Consummation of the Plan, to revoke or withdraw the Plan.  If the Plan is revoked or withdrawn or if Confirmation does not occur, the Plan shall be null and void and have no force and effect. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

6.06    Final Order.

Except as otherwise expressly provided in the Plan, any requirement in the Plan for a Final Order may be waived by the Debtor or Reorganized Debtor upon written notice to the Bankruptcy Court.  No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

6.07    Business Days.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

6.08    Severability.

Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision of the Plan is either illegal on its face or illegal as applied to any Claim or Interest, such provision shall be unenforceable as to all Holders of Claims or Interests or to the specific Holder of such Claim or Interest, as the case may be, as to which the provision is illegal.  Unless otherwise determined by the Bankruptcy Court, such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan. The Debtor reserves the right not to proceed with Confirmation or consummation of the Plan if any such ruling occurs.

6.09    Governing Law.

EXCEPT TO THE EXTENT THAT (i) THE BANKRUPTCY CODE OR BANKRUPTCY RULES OR OTHER FEDERAL LAWS ARE APPLICABLE, OR (ii) THE PROVISIONS OF ANY CONTRACT, INSTRUMENT, RELEASE, INDENTURE OR OTHER AGREEMENT OR DOCUMENT ENTERED INTO IN CONNECTION WITH THE PLAN PROVIDE THAT THE LAW OF A DIFFERENT JURISDICTION SHALL GOVERN, THE CONSTRUCTION, IMPLEMENTATION AND ENFORCEMENT OF THE PLAN AND ALL RIGHTS AND OBLIGATIONS ARISING UNDER THE PLAN SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE

STATE OF FLORIDA, WITHOUT GIVING EFFECT TO CONFLICTS-OF-LAW PRINCIPLES WHICH WOULD APPLY THE LAW OF A JURISDICTION OTHER THAN THE STATE OF FLORIDA OR THE UNITED STATES OF AMERICA.

6.10    Notices.

Any notice required or permitted to be provided under the Plan shall be in writing and served to the Debtor, c/o:

6.11    Filing of Additional Documents.

On or before substantial consummation of the Plan, the Debtor or Reorganized Debtor shall issue, execute, deliver, and file with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

6.12    Time.

Unless otherwise specified herein, in computing any period of time prescribed or allowed by the Plan, the day of the act or event from which the designated period begins to run shall not be included.  The last day of the period so computed shall be included, unless it is not a Business Day, in which event the period runs until the end of next succeeding day that is a Business Day. Otherwise, the provisions of Bankruptcy Rule 9006 shall apply.

6.13    Saturday, Sunday or Legal Holiday.

If any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

6.14    No Attorneys' Fees.

No attorneys' fees will be paid by the Debtor or Reorganized Debtor with respect to any Claim or Interest except as expressly specified herein or Allowed by a Final Order of the Bankruptcy Court.

6.15    Successors and Assigns.

The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

6.16    Preservation of Rights of Setoff.

The Debtor may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any

nature whatsoever that the Debtor may have against the Holder of such Claims; but neither the failure to do so nor the Allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim that the Debtor may have against such Holder.

6.17    No Injunctive Relief.

No Claim or Interest shall under any circumstances be entitled to specific performance or other injunctive, equitable or other prospective relief.

6.18    No Admissions.

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of any classification of any Claim or Interest.

6.19    Entire Agreement.

The Plan sets forth the entire agreement and undertakings relating to the subject matter hereof and supersedes all prior discussions and documents.  The Debtor shall not be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

6.20    Waiver.

The Debtor reserves its right, in its sole discretion, to waive any provision of the Plan to the extent such provision is for the sole benefit of the Debtor and/or its Affiliates.

6.21    Savings Clause

Any minor defect or inconsistency in the Plan may be corrected or amended by the Confirmation Order.

6.22    Vesting of Assets.

On the Effective Date and except as otherwise provided in the Plan, all the Property of the Estate will vest in the Reorganized Debtor free and clear of any and all Liens, Claims, and other interests of every kind and nature, including causes of action and claims for relief on account and in respect of the provisions of sections 362, 505, 510, 542, 544, 545, 547, 548, 549, 550, and 553 of the Code and any causes of action or claims for relief existing under state or other federal law. Pursuant to, among other authority, section 1123(b)(3)(B) of the Code, the Reorganized Debtor, for and on behalf of the Debtor's estate, shall have the power, authority and standing to prosecute, compromise or otherwise resolve such claims, with all proceeds derived therefrom, subject to the provisions of the Plan.  The Reorganized Debtor shall operate and manage the Debtor's property and make all Distributions in accordance with the terms of the Plan.

6.23    No Admissions.

The preparation and filing of this Plan and the Disclosure Statement were undertaken, in part, as a means of settling disputes among various parties in interest in the Case and is offered by the Proponent, in part, as an offer in compromise by the Proponent in the Plan to other parties in interest in the Case.  No statement or omission by Proponent in the Plan or the Disclosure Statement, including any statement concerning the estimated Allowed Amount of any Claim, shall preclude or estop the Proponent from objecting to any Claim, and no such statement or omission shall constitute, or be deemed to constitute, any type of admission, waiver or estoppel on the part of the Proponent, and nothing stated or unstated by the Proponent shall be admissible against the Proponent except in the hearings on the adequacy of the Disclosure Statement and the confirmation of the Plan.

6.24    Section 1146(a).

Pursuant to section 1146(a) of the Code, the making or delivery of an instrument of transfer under a plan confirmed in a chapter 11 bankruptcy case, may not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.  Refinancing or a sale of property is an essential part of this Plan. Therefore, pursuant to federal law under 11 U.S.C. § 1146(a), documents or instruments of transfer pertaining to a refinancing or sale  of the property that will inevitably require recording will be protected from otherwise applicable Florida law regarding the payment for documentary tax stamps.

ARTICLE 7    Notice of Intent to Request Cramdown

7.01    In the event that a sufficient number of holders of any impaired Class of Claims do not accept the Plan, the Proponent hereby gives notice that it will request, and does hereby request, confirmation of the Plan pursuant to 11 U.S.C. § 1129(b), commonly referred to as the "cramdown" provision of the Bankruptcy Code.  The Debtor hereby reserves the right to modify or vary the treatment of the Claims as to comply with 11 U.S.C. § 1129(b).

ARTICLE 8    Payment of US Trustee Fees

8.01    Notwithstanding any other provision of this Plan to the contrary, the Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6), within ten (10) days from the entry of an order confirming this Plan, for pre-confirmation periods and simultaneously provide to the United States Trustee an appropriate affidavit indicating the cash disbursements for the relevant period.  The Debtor, as a reorganized Debtor shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. §1930(a)(6), based upon post-confirmation disbursements made by the reorganized debtor, until the earlier of the closing of this case by the issuance of a final decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code, and the reorganized debtor shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating all the cash disbursements for the relevant period.

## **CONFIRMATION REQUEST**

The Debtor hereby requests confirmation of the Plan pursuant to section 1129(a) or, in the event that the Plan is not accepted by each of those Classes of Claims entitled to vote, section 1129(b) of the Bankruptcy Code.

SOUTHEASTERN CONSULTING &
DEVELOPMENT COMPANY, INC.


By: *Louis S. Weltman*
Louis S. Weltman, President