UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

IN RE:                                          Chapter 11 Case

SOUTHEASTERN CONSULTING &                       CASE NO.:  11-40398-KKS
DEVELOPMENT, INC., a Florida
corporation,

      Debtor.

_____/

## DEBTOR'S MOTION TO APPROVE SETTLEMENT, NON-DISPARAGEMENT, AND GENERAL RELEASE AGREEMENT

Debtor, Southeastern Consulting & Development Co., Inc. (the "Debtor" or "SCDC"), by and through undersigned counsel, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, hereby moves (the "Motion")[1] for entry of an order approving that certain *Settlement, Non-Disparagement, and General Release Agreement* (the "Agreement") dated February 18, 2015, a copy of which is attached hereto as **Exhibit "1,"** entered into between (i) the Debtor; (ii) Stephen C. Riggs, III ("Riggs"); (iii) Heritage FFR, LLC ("Heritage FFR"); (iv) Louis Solomon Weltman ("Weltman"); (v) Phoenix Realty Partners, Inc. ("Phoenix"); (vi) Highland Land Company, LLC ("Highland"); and (vii) NWJ Gator Investments, LLC ("NWJ," and, together with the Debtor, Riggs, Heritage FFR, Weltman, Phoenix and Highland, collectively, the "Parties").  In support of this Motion, the Debtor states:

## I.      Background

1.      On May 17, 2011 (the "Petition Date"), the Debtor filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreement.

2.      The Debtor is the developer of that certain master planned community known as Heritage Plantation, situated on U.S. Highway 85 in Okaloosa County, Florida (the "County"), between Crestview, Florida, and Laurel Hill, Florida, which was originally planned for seven hundred eighty (780) single family homes, a golf course, recreational facilities, and related amenities (the "Project").

3.      On April 22, 2014, Weltman and Phoenix each filed voluntary petitions under Chapter 11 of the Bankruptcy Code in those certain proceedings styled *In re Louis Solomon Weltman*, United States Bankruptcy Court for the Southern District of Florida, Case No. 14-19155-PGH (the "Weltman Chapter 11 Case"), and *In re Phoenix Realty Partners, Inc.*, United States Bankruptcy Court for the Southern District of Florida, Case No. 14-19156-PGH (the "Phoenix Chapter 11 Case"), respectively.

4.      On June 5, 2014, the Weltman Chapter 11 Case and the Phoenix Chapter 11 Case were transferred to the United States Bankruptcy Court for the Northern District of Florida, as Case Nos. 14-40331-KKS and 14-30332-KKS, respectively.

5.      As the Court is well aware, during the course of this case there has been extensive litigation, both within the Bankruptcy Court and in other forums as between Mr. Weltman and Stephen Riggs and certain of their affiliated entities.

6.      Riggs and Heritage FFR filed those certain civil actions styled (1) *Heritage FFR, LLC, and Stephen C. Riggs, III v. Southeastern Consulting & Development Co., Inc., et al.*, United States Bankruptcy Court for the Northern District of Florida, Adversary Proceeding No. 14-04028-KKS (the "SCDC Adversary Proceeding"); (2) *Stephen C. Riggs, III, and Heritage FFR, LLC v. Louis Solomon Weltman, et al.*, Circuit Court of the First Judicial Circuit in and for Okaloosa County, Florida, Case No. 2013 CA 005293 (the "Control Case"); and (3) *Stephen C.*

*Riggs, III, v. Louis Solomon Weltma*n, Circuit Court of the First Judicial Circuit in and for Okaloosa County, Florida, Case No. 2014 CA 001140 (the "Riggs Case") (collectively, the "Riggs Litigation").

7.      Michael Gibson filed those certain civil actions styled *Michael O. Gibson v. Heritage Plantation Homeowners' Ass'n, Inc., et al.*, Circuit Court of the First Judicial Circuit in and for Okaloosa County, Florida, Case No. 2013 CA 001719, and *Michael O. Gibson v. Heritage Plantation Community Development District, et al.*, Circuit Court of the First Judicial Circuit in and for Okaloosa County, Florida, Case No. 2013 CA 002008 (together, the "Gibson Litigation", and together with the Riggs Litigation, the "Litigation") allegedly seeking resolution of issues related to CDD assessments and HOA assessments.

8.      In the Litigation, the primary focus has been related to the ultimate "control" of the Debtor.

9.      The parties, at the Court's direction, have participated in multiple mediation sessions.  Those sessions did not result in a settlement, but the parties continued to work diligently in an effort to resolve the issues between them and as a result have entered into the Settlement Agreement attached hereto as Exhibit 1 and which is fully incorporated herein by reference.

## II.     Relief Requested and Basis for Relief Requested

10.      The Settlement Agreement will completely resolve the control issues, resolve the administrative claims asserted by Weltman and Phoenix, create a path for a prompt confirmation process and result in the resolution of numerous disputes and claims that have been litigated exhaustively for several years.

11.     Rule 9019(a) of the Federal Rules of Bankruptcy Procedure provides that, after notice and a hearing, a court may approve a proposed compromise and settlement.  The decision of whether or not to approve a compromise is within the sound discretion of the court.  *In re Carson*, 82 B.R. 847 (Bankr. S.D. Ohio 1987); *In re Mobile Air Drilling Co.*, 53 B.R. 605 (Bankr. N.D. Ohio 1985).

12.     In passing on proposed settlements, the standard that courts applied under the former Bankruptcy Act is the same standard as courts should apply under the Bankruptcy Code. *In re Carla Leather, Inc.*, 44 B.R. 457, 466 (Bankr. S.D.N.Y. 1984). As stated by the United States Supreme Court in *Protective Committee v. Anderson*, 300 U.S. 414 (1968), under the Act, to approve a proposed settlement, a court must find that the settlement was "fair and equitable" based on an educated estimate of the complexity, expense, and likely duration of . . . litigation, the possible difficulties of collecting on any judgment which might be obtained and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. *Protective Committee*, 300 U.S. at 424.

13.     This test was adopted by the Eleventh Circuit in *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990), which provides additional guidance as to whether a compromise should be approved. *Justice Oaks* established a four-part  test for approval:

(a)     The probability of success in litigation;

(b)     The difficulties, if any, to be encountered in the matter of collection;

(c)     The complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and

(d)     The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.*

14.     The proposed settlement satisfies the *Justice Oaks* standard.   The Debtor believes that the Agreement is in the best interests of the Debtor's estate for several reasons; (1)  the "control"  issues are completely resolved;  (2)  all of the heavily contested and litigated claims between the parties are resolved; and (3) the Debtor, upon approval of the Settlement Agreement, will have a prompt path towards the confirmation of a Plan of Reorganization.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order:

(i)     granting this Motion;

(ii)     approving the Agreement upon the terms set forth therein, and; and

(iii)     granting such other and further  relief as the Court deems just and proper.

**I HEREBY CERTIFY** that a true and correct copy of the forgoing was served on this 18th day of February, 2015, via electronic transmission through the Court's CM/ECF system upon all parties on the attached CM/ECF Service List.

Respectfully submitted,

BERGER SINGERMAN LLP
*Counsel for Debtor*
125 South Gadsden Street, Suite 300
Tallahassee, FL 32301
Telephone:  (850) 561-3010
Facsimile:  (850) 561-3013

By:   */s/  Brian G. Rich*
          Brian G. Rich
          Florida Bar No. 38229
          brich@bergersingerman.com

## CM/ECF SERVICE LIST

- Philip Alan Bates    pbates@philipbates.net, swalton@philipbates.net;wwest@philipbates.net
- Philip Alan Bates    pbates@philipbates.net, swalton@philipbates.net;wwest@philipbates.net
- Keith L. Bell    kbell@cphlaw.com, elee@cphlaw.com;btraina@cphlaw.com
- Noel R. Boeke    noel.boeke@hklaw.com, wendysue.henry@hklaw.com;doris.yates@hklaw.com
- William E. Bond    wbond@cphlaw.com, ldunlap@cphlaw.com
- Kathleen L. DiSanto    kdisanto@jennisbowen.com, ecf@jennisbowen.com
- Jason H. Egan    jason.h.egan@usdoj.gov
- Leonard H. Gilbert    leonard.gilbert@hklaw.com
- Mark D. Hildreth    mhildreth@slk-law.com, sgollnick@slk-law.com
- Jonathan T. Holloway    jholloway@okaloosalaw.com
- David S. Jennis    ecf@jennisbowen.com;kkearney@jennisbowen.com
- David Lloyd Merrill    david@ombkc.com, zoraida@ombkc.com
- Ronald A. Mowrey    rmowrey@mowreylaw.com, firm@mowreylaw.com
- Jason Michael Osborn    josborn@osborngroupllc.com, notices@osborngroupllc.com
- Robert James Powell    rpowell@cphlaw.com, ldunlap@cphlaw.com;sgaherty@cphlaw.com;jfulford@cphlaw.com
- Brian G. Rich    brich@bergersingerman.com, efile@bergersingerman.com;bwalter@bergersingerman.com;kbeck@bergersingerman.com;sfulghum@bergersingerman.com;efile@ecf.inforuptcy.com
- Ralph Hamilton Schofield    rschofield@kaglawfirm.com, mbaughn@kaglawfirm.com;aneeld@kaglawfirm.com;ktownsend@kaglawfirm.com
- Elba N. Serrano-Torres    bk@wggdlaw.com
- Marc P. Solomon    msolomon@burr.com, mstinson@burr.com;jsykes@burr.com
- Robert A. Soriano    sorianor@gtlaw.com, rechtinh@gtlaw.com;tpalitdock@gtlaw.com
- Jonathan Sykes    jsykes@burr.com
- United States Trustee    USTPRegion21.TL.ECF@usdoj.gov
- D. Tyler Van Leuven    bk@wggdlaw.com, tvanleuven@wggdlaw.com
- Sarah St John Walton    swalton@philipbates.net, pbates@philipbates.net;wwest@philipbates.net
- Sarah St John Walton    swalton@philipbates.net, pbates@philipbates.net;wwest@philipbates.net

# EXHIBIT "1"

## SETTLEMENT, NON-DISPARAGEMENT, AND GENERAL RELEASE AGREEMENT

THIS **SETTLEMENT, NON-DISPARAGEMENT, AND GENERAL RELEASE AGREEMENT** (this "Agreement") is made and entered into as of February 18, 2015 (the "Agreement Date"), by and among **STEPHEN C. RIGGS, III**, an individual ("Riggs"), and **HERITAGE FFR, LLC**, a Florida limited liability company ("Heritage FFR"), and **SOUTHEASTERN CONSULTING & DEVELOPMENT COMPANY, INC.**, a Florida corporation ("SCDC"), **LOUIS SOLOMON WELTMAN**, an individual ("Weltman"), **PHOENIX REALTY PARTNERS, INC., a Florida corporation** ("Phoenix"), **HIGHLAND LAND COMPANY, LLC**, a Georgia limited liability company ("Highland"), and **NWJ GATOR INVESTMENTS, LLC**, a Florida limited liability company ("NWJ") (each of the foregoing may be referenced herein individually as a "Party" and together or collectively as the "Parties").

### WITNESSETH:

WHEREAS, SCDC is the developer of that certain master planned community known as Heritage Plantation, situated on U.S. Highway 85 in Okaloosa County, Florida (the "County"), between Crestview, Florida, and Laurel Hill, Florida, which was originally planned for seven hundred eighty (780) single family homes, a golf course, recreational facilities, and related amenities (the "Project");

WHEREAS, on or about March 7, 2007, the FDEP issued to SCDC's wholly-owned subsidiary, Water Reclamation of NWF, L.L.C. ("Water Reclamation"), FDEP Permit No. FLA542873-001-DW3P/NP (the "Permit"), which (1) related to the construction and operation of the North Okaloosa Water Reclamation Facility ("NOWRF") on that certain 42-acre parcel of property known as the "Carter Property" (defined below), and (2) which provided for the provision of wastewater treatment services to the Project;

WHEREAS, pursuant to that certain Stipulated Final Judgment in that certain civil action styled *Richard Carter v. Water Reclamation of NWF, LLC, et al.*, Circuit Court of the First Judicial Circuit in and for Okaloosa County, Florida, Case No. 08-CA-4835 (the "Carter Case"), which was recorded in Official Records Book 2895, Page 3359, in the Public Records of Okaloosa County, Florida, Richard Carter ("Carter") foreclosed against the interests of Water Reclamation and ultimately took title to the Carter Property;

WHEREAS, on November 23, 2009, Carter obtained that certain Final Deficiency Judgment in the Carter Case against Riggs and Water Reclamation, a certified copy of which was recorded in Official Records Book 2916, Page 259, in the Public Records of Okaloosa County, Florida (the "Deficiency Judgment");

WHEREAS, SCDC, Phoenix, and Riggs are parties to that certain Interim Management and Restructuring Services Agreement, dated as of April 18, 2011 (the "IMSA") and with an effective Date of May 1, 2011, at which time Riggs owned one thousand (1,000) shares of the issued and outstanding common stock of SCDC;



Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC;
Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman;
Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC

**WHEREAS,** pursuant to the IMSA, (a) SCDC and Phoenix entered into that certain Southeastern Consulting & Development, Inc., Stock Option Letter Agreement, dated as of April 18, 2011 (the "Phoenix Option"), pursuant to which SCDC offered to Phoenix the right to purchase 9,000 shares of the authorized, but unissued, common stock in SCDC, subject to the terms of the Phoenix Option; and (b) Phoenix and Riggs entered into that certain Phoenix Realty Partners, Inc., Stock Option Letter, dated as of April 18, 2011 (the "SCDC Option"), pursuant to which Phoenix offered to Riggs the right to purchase 4,410 shares of the SCDC common stock purchased by Phoenix pursuant to the Phoenix Option, subject to the terms of the Phoenix Option;

**WHEREAS,** Phoenix exercised the Phoenix Option on May 6, 2011, and purchased the remaining 9,000 shares of the authorized common stock of SCDC, representing a ninety (90%) interest in the equity of SCDC;

**WHEREAS,** there is a dispute as between Riggs, Weltman and Phoenix regarding the present stock ownership and percentages of stock ownership of SCDC;

**WHEREAS,** on May 17, 2011, SCDC filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 1, *et seq.* (the "Bankruptcy Code"), in that certain proceeding styled *In re Southeastern Consulting and Development Co., Inc.*, United States Bankruptcy Court for the Northern District of Florida, Case No. 11-40398-KKS (the "SCDC Chapter 11 Case");

**WHEREAS,** during the course of the SCDC Chapter 11 Case, FDEP issued a conditional renewal for the Permit, which subsequently expired, and Turner Heritage Homes, Inc. ("Turner") applied for and received a new permit (FDEP Permit No. FLA542873-003-DW3P/NP) (the "Turner Permit"), to construct and operate the NOWRF;

**WHEREAS,** on December 18, 2012, Phoenix purchased the Carter Property, and Carter assigned the Deficiency Judgment to Phoenix;

**WHEREAS,** on or about December 31, 2012, and pursuant to those certain Articles of Merger filed on December 18, 2012, with the Florida Secretary of State as Document Number P93000020212, Turner merged into Highland, and the Turner Permit became the property of Highland, as successor-by-merger to Turner;

**WHEREAS,** on January 18, 2013, Highland filed a voluntary petition under Chapter 11 of the Bankruptcy Code in that certain proceeding styled *In re Highland Land Co., LLC*, United States Bankruptcy Court for the Northern District of Florida, Case No. 13-50024-WSS (the "Highland Chapter 11 Case");

**WHEREAS,** Riggs and Heritage FFR filed those certain civil actions styled (1) *Heritage FFR, LLC, and Stephen C. Riggs, III v. Southeastern Consulting & Development Co., Inc., et al.*, United States Bankruptcy Court for the Northern District of Florida, Adversary Proceeding No. 14-04028-KKS (the "SCDC Adversary Proceeding"); (2) *Stephen C. Riggs, III, and Heritage*



Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC;
Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman;
Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC

*FFR, LLC v. Louis Solomon Weltman, et al.*, Circuit Court of the First Judicial Circuit in and for
Okaloosa County, Florida, Case No. 2013 CA 005293 (the "Control Case"); and (3) *Stephen C.
Riggs, III, v. Louis Solomon Weltman*, Circuit Court of the First Judicial Circuit in and for
Okaloosa County, Florida, Case No. 2014 CA 001140 (the "Riggs Case") (collectively, the
"Riggs Litigation");

**WHEREAS,** Michael Gibson filed those certain civil actions styled *Michael O. Gibson v.
Heritage Plantation Homeowners' Ass'n, Inc., et al.*, Circuit Court of the First Judicial Circuit in
and for Okaloosa County, Florida, Case No. 2013 CA 001719, and *Michael O. Gibson v.
Heritage Plantation Community Development District, et al.*, Circuit Court of the First Judicial
Circuit in and for Okaloosa County, Florida, Case No. 2013 CA 002008 (together, the "Gibson
Litigation", and together with the Riggs Litigation, the "Litigation") allegedly seeking resolution
of issues related to CDD assessments and HOA assessments;

**WHEREAS,** on or about January 2, 2014, Phoenix assigned to NWJ the Deficiency
Judgment, pursuant to that certain Assignment of Rights and Claims, dated as of January 2, 2014,
and recorded in recorded in Official Records Book 3139, Page 1148, in the Public Records of
Okaloosa County, Florida;

**WHEREAS,** on April 22, 2014, Weltman and Phoenix each filed voluntary petitions
under Chapter 11 of the Bankruptcy Code in those certain proceedings styled *In re Louis
Solomon Weltman*, United States Bankruptcy Court for the Southern District of Florida, Case No.
14-19155-PGH (the "Weltman Chapter 11 Case"), and *In re Phoenix Realty Partners, Inc.*,
United States Bankruptcy Court for the Southern District of Florida, Case No. 14-19156-PGH
(the "Phoenix Chapter 11 Case"), respectively;

**WHEREAS,** on June 5, 2014, the Weltman Chapter 11 Case and the Phoenix Chapter 11
Case were transferred to the United States Bankruptcy Court for the Northern District of Florida,
as Case Nos. 14-40331-KKS and 14-30332-KKS, respectively;

**WHEREAS,** as shown in Phoenix's Schedules A and B (ECF No. 1-18 in the Phoenix
Chapter 11 Case), Phoenix owns that certain real property located at 6722 Florida Ave.,
Crestview, Okaloosa County, Florida (Parcel #104N23000000100000); 6716 HWY 85 N,
Crestview, Okaloosa County, Florida (Parcel # 104N23000000090000); and 32.5 acres
Crestview, Okaloosa County, Florida (Parcel #114N23000000020000) (together with all
improvements thereon or associated therewith, the "Carter Property"), and more particularly
described on **Exhibit A** attached hereto and incorporated by this reference;

**WHEREAS,** NWJ is the holder of that certain Commercial Real Estate Mortgage and
Security Agreement, by Phoenix in favor of Jill K. and Louis S. Weltman, as husband and wife,
tenants by the entireties, dated as of December 18, 2012, and recorded in Official Records Book
3096, Page 3336, and modified by that certain Mortgage Modification Agreement, dated as of
January 2, 2014, and recorded in Official Records Book 3139, Page 1161, as assigned by Jill K.
Weltman and Louis S. Weltman, , as husband and wife, tenants by the entireties, to NWJ



Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC;
Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman;
Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC

pursuant to that certain Assignment of Note and Mortgage, dated as of April 1, 2014, and recorded in Official Records Book 3143, Page 3808, all in the Public Records of Okaloosa County, Florida (together, the "Mortgage"), which encumbers the Carter Property;

**WHEREAS,** Weltman asserts that the Heritage Plantation Community Development District ("District" or the "CDD") is indebted to Assessment Claims, LLC, a Florida limited liability company, which is an affiliate of NWJ, in the amount of $48,500.00 (the "CDD Payment Obligation");

**WHEREAS,** Weltman and Highland assert that the Heritage Plantation Homeowners' Association, Inc. ("HOA") is indebted to Highland in the amount of $37,849.71 (the "HOA Payment Obligation");

**WHEREAS,** the Parties dispute the CDD Payment Obligation and the HOA Payment Obligation, neither of which are obligations of Riggs or Heritage FFR;

**WHEREAS,** as of the Agreement Date, the books and records of SCDC reflect that Riggs owns 7,109 of the 71,109 issued and outstanding shares of common stock in SCDC (the "Riggs Shares"), and Weltman owns 64,000 of the 71,109 issued and outstanding shares of common stock in SCDC (the "Weltman Shares"), and there are no other securities or classes of stock authorized or outstanding;

**WHEREAS,** the Parties desire to resolve all claims and defenses between them in the Litigation and to settle any and all others matters between them arising out of or related to the Litigation, the IMSA, the Riggs Option, and the Phoenix Option;

**NOW, THEREFORE,** in consideration of the mutually dependent covenants and agreements of the parties set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.      **BANKRUPTCY COURT APPROVAL.** Except for those actions to be taken by the Parties upon or immediately following the execution of this Agreement, pursuant to the Bankruptcy Code and Fed. R. Bankr. P. 9019, this Agreement and the agreements referenced herein or attached hereto and incorporated by reference are subject to approval by the United States Bankruptcy Court for the Northern District of Florida (the "Bankruptcy Court") in the SCDC Chapter 11 Case, the Weltman Chapter 11 Case, and the Phoenix Chapter 11 Case. The Parties shall immediately seek Bankruptcy Court approval of this Agreement and shall cooperate in seeking the approval of the Agreement. In the event this Agreement shall not be approved in its entirety as provided in this <u>Section 1</u>, then this Agreement shall be of no further force and effect, and the Parties shall have no liability one to the other with respect to this Agreement and this Agreement only.

2.      **COVENANTS OF RIGGS AND HERITAGE FFR.** In consideration of the covenants of Weltman, Phoenix, Highland, and NWJ set forth in <u>Sections 3</u>, <u>4</u>, <u>5</u>, and <u>6</u> of this Agreement, Riggs and Heritage FFR agree as follows:

4



Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC;
Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman;
Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC

      a.    **Riggs Plan Filing.** Not later than March 30, 2015 (the "Plan Filing Date"), Riggs and Heritage FFR shall file a Disclosure Statement and Plan of Reorganization (as the same may be amended from time to time, the "Riggs Plan") in the SCDC Chapter 11 Case. The Riggs Plan shall:

      (1)    Substantially include, or conform to, the terms of this Agreement;

      (2)    Be confirmed within six (6) months after the Plan Filing Date (the "Plan Confirmation Date") pursuant to Section 1129 of the Bankruptcy Code;

      (3)    Provide for an "Effective Date" that shall be no more than 30 days after the later of (a) the entry of an order confirming the Riggs Plan pursuant to Section 1129 of the Bankruptcy Code, or (b) the Plan Confirmation Date; and

      (4)    In consideration of Phoenix's conveyance of the Carter Property and other consideration, Riggs and Heritage FFR shall pay on the Effective Date of the Plan the sum of Five Hundred Thousand and No/100 Dollars ($500,000.00) (the "Purchase Price") either to NWJ, as the mortgagee under the Mortgage in consideration of the assignment of the Mortgage to Riggs, or to Phoenix, as the record owner of the Carter Property.

      b.    **Cooperation in the Phoenix Chapter 11 Case.** From and after Bankruptcy Court approval of this Agreement and continuing so long as (1) Phoenix, Weltman and NWJ shall not be in default under the terms of this Agreement (subject to the Notice and Opportunity to Cure provisions of this Agreement), and (2) Riggs and Heritage FFR shall not be required to expend time or money or incur any financial or other liability, Riggs and Heritage FFR shall cooperate, and shall not interfere, with Phoenix in the Phoenix Chapter 11 Case as reasonably requested by Phoenix or its counsel, including, without limitation, (i) refraining from filing file a proof of claim, except as otherwise already filed; (ii) objecting to the Motion to Dismiss the Phoenix Chapter 11 Case filed by Phoenix (ECF No. 121 in the Phoenix Chapter 11 Case); (iii) withdrawing their objections to the employment of Robert Manela, Manela & Associates, CPA's, as accountant for Phoenix, and David L. Merrill, Esq., Ozment Merrill, as counsel for Phoenix; (iv) consenting to the re-transfer of the Weltman Shares back to Phoenix from Weltman pursuant to Weltman's Motion (ECF No. 2 in the Weltman Chapter 11 Case); and (v) not responding to Phoenix's Objection to the Proof of Claim (ECF No. 120 in the Phoenix Chapter 11 Case), and upon Bankruptcy Court approval of this Agreement, Riggs and Heritage FFR's Proof of Claim shall become a disallowed claim.

      c.    **Cooperation in the Weltman Chapter 11 Case.** From and after Bankruptcy Court approval of this Agreement and continuing so long as (1) Phoenix, Weltman and NWJ shall not be in default under the terms of this Agreement (subject to the Notice and Opportunity to Cure provisions of this Agreement), and (2) Riggs and Heritage FFR shall not be required to expend time or money or incur any financial or other liability, Riggs and Heritage FFR shall cooperate, and shall not interfere, with Weltman in the Weltman Chapter 11 Case as reasonably requested by Weltman or his counsel, including, without limitation, (i) refraining



Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC;
Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman;
Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC

from filing a proof of claim in the Weltman Chapter 11 Case, except as otherwise already filed;
(ii) not objecting to Weltman's Motion to set a hearing on Weltman's Disclosure Statement, as
amended from time to time, but only so long as Weltman's Disclosure Statement and Plan of
Reorganization do not interfere with, impair, or otherwise unfavorably impact the Riggs Plan and
Weltman's obligations under this Agreement; (iii) withdrawing their objections to the
employment of Robert Manela, Manela & Associates, CPA's, as accountant for Weltman, and
David L. Merrill, Esq., Ozment Merrill, as counsel for Weltman; (iv) consenting to the re-transfer
of the Weltman Shares back to Phoenix from Weltman pursuant to Weltman's motion (ECF No. 2
in the Weltman Chapter 11 Case); (v) not opposing the Weltman's Claim of Exemption; (vi) not
opposing David L. Merrill's representation of NWJ in connection with any matter unrelated to
SCDC and the subject matter of this Agreement; and (vii) not responding to Weltman's Objection
to the Proof of Claim (ECF No. 120 in the Weltman Chapter 11 Case), and upon Bankruptcy
Court approval of this Agreement, Riggs and Heritage FFR's Proof of Claim shall become a
disallowed claim.

        d.    **Highland Case.**

        (1)    The Parties acknowledge and agree that in furtherance of this
Agreement and in consideration of the covenants of Weltman, Phoenix, Highland, and NWJ
contained in this Agreement, Riggs and Heritage FFR have withdrawn, without prejudice, their
Preliminary Objection to Approval of the Second Amended Disclosure Statement and
Confirmation of the Amended Plan of Reorganization (ECF No. 457 in the Highland Chapter 11
Case), in consideration of the plan modifications to Highland's Second Amended Plan of
Reorganization (ECF No. 391 in the Highland Chapter 11 Case) (the "Highland Plan") agreed to
at the hearing held on February 9, 2015; a true and correct copy of the confirmation order
confirming the Highland Plan has been filed with the Bankruptcy Court (ECF No. ___ in the
Highland Chapter 11 Case).

        (2)    From and after the Agreement Date, neither Riggs nor Heritage
FFR shall interfere in the Highland Chapter 11 Case, subject to the following conditions:

        (i)    None of Weltman, Phoenix, Highland, or NWJ shall be in
default under the terms of this Agreement;

        (ii)    The order confirming Highland's Second Amended Plan of
Reorganization (ECF No. 391 in the Highland Chapter 11 Case) (the "Highland Plan") pursuant
to Section 1129 of the Bankruptcy Code shall provide that neither Riggs nor Heritage FFR shall
have waived, or be deemed to have waived, any rights on behalf of Riggs, Heritage FFR, or
SCDC with respect to the Turner Permit; and that confirmation of the Highland Plan shall not
bar, shall not have any preemptive or preclusive effect, shall not foreclose, and shall not subject
to the effects of *res judicata* Riggs', Heritage FFR's, or SCDC's claims with respect to the Turner
Permit.



Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC;
Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman;
Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC

(iii)    Provided that Riggs and Heritage FFR shall not be in default under this Agreement, Riggs and Heritage FFR shall be entitled, if necessary, to enforce this Agreement by taking all actions deemed necessary or advisable by them in the Highland Chapter 11 Case.

3.    **COVENANTS OF WELTMAN.**  In consideration of the covenants of Riggs and Heritage FFR set forth in Section 2 of this Agreement, Weltman agrees as follows:

a.    **Withdrawal of Administrative Expenses Claims.**  For purposes of the Riggs Plan and to further the prosecution of the Riggs Plan, upon the filing of the Riggs Plan and after approval of this Agreement, Weltman shall withdraw without prejudice the Weltman Administrative Expense Claim.  The Riggs Plan shall not be required or obligated to provide for any provision for payment of the Weltman Administrative Expense Claim, which shall be disallowed in its entirety under the Riggs Plan.  On the Plan Confirmation Date, the withdrawal of the Weltman Administrative Expense Claim shall be deemed "with prejudice."  In the event the provisions of Section 8.a. shall be in effect, then, immediately upon written request by Riggs or Heritage FFR, Weltman shall withdraw with prejudice or release completely the Weltman Administrative Expense Claim.

b.    **CDD Payment Obligation.**  With respect to the CDD Payment Obligation, Weltman, Phoenix, and NWJ shall cause Assessment Claims, LLC, to waive and release $24,500.00 of such claim (the "Waived CDD Claim"); provided, however, that solely for purposes of facilitating the terms of this Agreement, Riggs agrees that he shall not object to, nor shall he attempt to exert any influence over, the surviving claim of Assessment Claims, LLC, in the amount of $24,000.00 (the "Valid CDD Claim").  Neither Riggs, Heritage FFR, nor any party controlling, controlled by, or under common control with Riggs or Heritage FFR, shall be responsible or liable for payment of the same, nor shall Riggs and Heritage FFR be responsible for collection or payment of the CDD Payment Obligation.

c.    **HOA Payment Obligation.**  With respect to the HOA Payment Obligation, and in exchange for a general release in favor of Weltman from the HOA, Highland agrees to waive and release the HOA Payment Obligation.  On the Effective Date, Weltman shall render control of the HOA to Riggs free of any indebtedness to Weltman, Phoenix, Highland, or NWJ; provided, however, that Weltman shall use his best efforts to cause the HOA to cooperate with Riggs and Heritage FFR with respect to the Riggs Plan.

d.    **Legal Fees Incurred.**  Except for (1) the Administrative Claim of Berger Singerman, LLP ("BSLLP") in the SCDC Chapter 11 Case, which shall be the sole responsibility of SCDC and separately negotiated between BSLLP and Riggs, including the release of Phoenix's guaranty of such BSLLP's administrative claim, and (2) fees already incurred or paid by the CDD or the HOA, Weltman shall be solely responsible for the legal fees incurred by him or any of the Weltman-related Parties (including, without limitation, Phoenix, Highland, NWJ, or Assessment Claims, LLC) at Weltman's direction in any of the Litigation or in any other case or matter relating to SCDC.



Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC;
Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman;
Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC

      e.    **Mediator's Fees.** Upon the payment of the Purchase Price, Weltman shall pay the remaining amounts due to Leonard Gilbert of Holland & Knight, LLP, the mediator in the SCDC Chapter 11 Case, in the amount of Twelve Thousand One Hundred Sixty-Four Thousand and No/100 Dollars ($12,164.00), or such other amount as may be agreed to by Mr. Gilbert; provided. Such amounts shall not be or become obligations of SCDC, Riggs, or Heritage FFR.

      f.    **Conveyances.** On the Effective Date of the Riggs Plan and upon payment of the Purchase Price, Weltman shall convey or cause to be conveyed, (i) the Weltman Shares, and (ii) all lots owned by Weltman or Highland, but excluding those certain lots conveyed to HP HOA Lot Acquisitions, LLC, by Gary Paulzak. The conveyances referenced in this <u>Section 3.f.</u> shall be made to such entity or entities as Riggs and Heritage FFR may designate. Except as to assessments for property taxes, assessments of the CDD or the HOA, those matters of record that are detailed in a typical title search conducted in connection with such conveyances, or as expressly approved in writing by Riggs, Heritage FFR, or their counsel, the conveyances herein shall be free and clear of any all liens and encumbrances. The conveyances referenced in this Section 3.f. shall be in the form of **Exhibits B-1 and B-2** attached hereto and incorporated by this reference.

      g.    **Gibson Litigation.** Weltman, individually, shall not take any action in connection with the Gibson Litigation or initiate any further steps to enforce assessments by the CDD or the HOA, whether through foreclosure or otherwise. Weltman shall not take any action on behalf of the HOA to violate the temporary injunction ordered by the State Court. In connection with his duties as Supervisor of the CDD or as an Officer or Director of the HOA, Weltman shall abstain from any action, vote or decision that involves enforcing assessments whether through foreclosure or otherwise.

      h.    **Cooperation.** Weltman shall (a) cooperate with Riggs and Heritage FFR, (b) not interfere with the submission and approval of the Riggs Plan, and (c) to the extent necessary vote in favor of the Riggs Plan, provided that the Riggs Plan shall in all respects conform to the terms outlined herein and as set forth in this Agreement. This cooperation shall not require the expenditure of significant time or any expense of any kind on the part of Weltman.

    4.    **COVENANTS OF PHOENIX.** In consideration of the covenants of Riggs and Heritage FFR set forth in <u>Section 2</u> of this Agreement, Phoenix agrees as follows:

      a.    **Withdrawal of Administrative Expenses Claims.** For purposes of the Riggs Plan and to further the prosecution of the Riggs Plan, upon the filing of the Riggs Plan and after approval of this Agreement, Phoenix shall withdraw without prejudice the Phoenix Administrative Expense Claim. The Riggs Plan shall not be required or obligated to provide for any provision for payment of the Phoenix Administrative Expense Claim, which shall be disallowed in its entirety under the Riggs Plan. On the Plan Confirmation Date, the withdrawal of the Phoenix Administrative Expense Claim shall be deemed "with prejudice." In the event the



provisions of Section 8.a. shall be in effect, then, immediately upon written request by Riggs or Heritage FFR, Phoenix shall withdraw with prejudice or release completely the Phoenix Administrative Expense Claim.

b.    **Dismissal.** Upon Bankruptcy Court approval of this Agreement, Phoenix shall immediately dismiss with prejudice the Phoenix Chapter 11 Case. If, after any prejudice period applicable in connection with the dismissal of the Phoenix Chapter 11 Case referenced in the immediately preceding sentence, Phoenix shall file another voluntary petition under any chapter of the Bankruptcy Code, such filing shall be made in the Bankruptcy Court.

c.    **Conveyances.** On the Effective Date of the Riggs Plan, Phoenix shall convey the Carter Property. The conveyances referenced in this Section 4.c. shall be made to such entity or entities as Riggs and Heritage FFR may designate. Except as to the Mortgage, which may be assigned to Riggs or his designee, property taxes, and those matters of record that are detailed in a typical title search conducted in connection with such conveyances, or as expressly approved in writing by Riggs, Heritage FFR, or their counsel, the conveyance of the Carter Property shall be free and clear of any all liens and encumbrances.

5.    **COVENANTS OF HIGHLAND.** In partial consideration of the covenants of Riggs and Heritage FFR set forth in Section 2 of this Agreement, Highland (i) shall assign the Turner Permit to such entity or entities as Riggs and Heritage FFR may designate and execute all such documents as required by the FDEP to effectuate such assignment of the Turner Permit; (ii) on the Effective Date of the Riggs Plan and upon payment of the Purchase Price, convey all lots owned by Highland, but excluding those certain lots conveyed to HP HOA Lot Acquisitions, LLC, by Gary Paulzak, such conveyances referenced in this Section 5 shall be made to such entity or entities as Riggs and Heritage FFR may designate, subject only to assessments for property taxes, or assessments of the CDD or the HOA, and otherwise free and clear of any all liens and encumbrances, except for those matters of record that are detailed in a typical title search conducted in connection with such conveyances, or as expressly approved in writing by Riggs, Heritage FFR, or their counsel; and (iii) agrees that the order confirming the Highland Plan pursuant to Section 1129 of the Bankruptcy Code shall provide that neither Riggs nor Heritage FFR shall have waived, nor be deemed to have waived, any rights on behalf of Riggs, Heritage FFR, or SCDC with respect to the Permit; and that confirmation of the Highland Plan shall not bar, shall not have any preemptive or preclusive effect, shall not foreclose, and shall not subject to the effects of *res judicata* Riggs', Heritage FFR's, or SCDC's claims with respect to the Turner Permit all of which claim or claims shall be subject to the jurisdiction of the Bankruptcy Court in the Highland Chapter 11 Case.

6.    **COVENANTS OF NWJ.** In consideration of the covenants of Riggs and Heritage FFR set forth in Section 2 of this Agreement, upon payment of the Purchase Price, NWJ shall (a) assign the Mortgage to Riggs, or release the lien of the Mortgage, such that the conveyance of the Carter Property, in the election of Riggs, shall be made free and clear of liens of NWJ, and (b) release the Deficiency Judgment and the lien thereof against the assets of SCDC or Water Reclamation.



7.   **MUTUAL RELEASES.**   Upon Bankruptcy Court approval of this Agreement, Weltman, including Weltman's wife and children, Phoenix, Highland and NWJ, on the one hand, and Riggs and Heritage FFR, on the other hand, shall execute mutual releases in the form attached hereto as **Exhibit C** and incorporated by this reference, which shall release all claims by each of the Parties to this Agreement, except for their respective rights and obligations under this Agreement or such other agreements as shall or may be entered into pursuant to the terms of this Agreement. Additional releases shall be provided by the Parties to include mutual releases between Weltman, including Weltman's wife and children, Phoenix, Douglas E. Turner, and NWJ, on the one hand, and Heritage FFR, Riggs, and each of Larry and Lynn Keefe, J. Rex Farrior, III, Phil Dingle, Michael Gibson, and their respective, heirs, family members, legatees, successors, or assigns, on the other hand.

8.   **EFFECT(S) OF FILING RIGGS PLAN.**

a.   **Redistribution of Stock.**   In the event that (a) the Riggs Plan shall not have been filed by the Plan Filing Date, or (b) the Riggs Plan shall not be confirmed by the Plan Confirmation Date, and the Parties shall not have agreed mutually to extend the Plan Confirmation Date, then Phoenix shall convey to Riggs 28,445.5 shares of the issued and outstanding stock in SCDC owned by it as of the Agreement Date, such that the shares of stock of SCDC shall be divided equally between Riggs and Phoenix; and the number of shares of stock above and beyond the initial issuance of 10,000 shares shall be cancelled, such that each of Riggs and Phoenix shall own 5,000 shares of the issued and outstanding stock of SCDC. Furthermore, Riggs and Phoenix shall execute a mutually agreeable shareholder agreement ("Shareholder Agreement") that contemplates standard provisions for a 50/50 ownership structure, including, without limitation, restrictive stock transfer provisions, alternative dispute resolution provisions, and provisions for binding arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, except as otherwise expressly agreed in writing by Riggs and Weltman. Any disputes regarding the drafting and execution of the Shareholder Agreement shall be resolved pursuant to binding arbitration in Orlando, Florida.

b.   **Resignation.**   Upon the filing of the Riggs Plan on or before the Plan Filing Date, Weltman shall resign as President of SCDC and shall resign from the board of directors of SCDC, and Weltman agrees that from such time up to and including the Plan Confirmation Date, unless extended by Weltman in his sole discretion, (1) Riggs shall serve as President of SCDC, (2) none of Weltman or any other member of the board of directors or the board of directors as a whole shall take any action adverse to the efforts or interests of Riggs with respect to the operation and management of SCDC unless and until the provisions of Section 8.a. shall take effect; provided, however, that the actions taken or to be taken by Riggs as President of SCDC shall conform to, and shall not undermine, the terms of this Agreement; further provided, however that if the Riggs Plan is not approved, Riggs and Weltman shall serve as co-Presidents and Directors of SCDC subject to the Shareholder Agreement.

9.   **LIMITATION OF LIABILITY FOR MATTERS RELATED TO SCDC.** Upon the Plan Filing Date, (a) Riggs shall become the "Responsible Party" and Weltman shall be

removed as the "Responsible Party" upon the approval of same by the FDEP, and (b) upon the Plan Filing Date, and provided that Weltman shall not be in default under this Agreement, Weltman shall have no further liability with respect to SCDC or any of its obligations or liabilities, except as provided herein or as set forth in this Agreement or such other agreements as shall or may be entered into pursuant to the terms of this Agreement. In the event the provisions of Section 8.a. shall be in effect, then, upon redistribution of the stock in SCDC contemplated in Section 8.a., each of Riggs and Weltman shall be the "Responsible Party" on a 50/50 basis.

      10.    **DISMISSAL OF LITIGATION.** Immediately upon the Agreement Date, the Parties shall cause their attorneys to execute and deliver in escrow, Stipulations of Dismissal with Prejudice in form and substance mutually agreeable to the Parties and drafted and prepared in the utmost of good faith (the "Stipulations"). Upon the Bankruptcy Court's approval of this Agreement, counsel for the Parties shall release the Stipulations for filing in the SCDC Adversary Proceeding, the Control Case, and the Riggs Case, but specifically excluding the Gibson Litigation, dismissing with prejudice all outstanding or pending claims asserted in the SCDC Adversary Proceeding, the Control Case, and the Riggs Case, with costs and attorney's fees to be paid by the Party incurring such costs and fees. This is a full and final settlement of all of the claims and defenses which are or have been asserted in the SCDC Adversary Proceeding, the Control Case, and the Riggs Case.

      11.    **FURTHER ASSURANCES.** Subject to the terms and conditions of this Agreement, each Party will use commercially reasonable efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary or desirable under applicable laws and regulations to consummate the terms of this Agreement (each a "Future Action" and collectively, the "Future Actions"), including, without limitation, cooperating with one another for purposes of obtaining Bankruptcy Court approval of this Agreement for each such Party subject to the Bankruptcy Court's jurisdiction, and to execute and deliver such other documents, certificates, agreements and other writings and to take such other actions as may be reasonably necessary or desirable in order to consummate or implement expeditiously the provisions of this Agreement, each party to do so at its own cost and expense. It is expressly understood that Weltman shall not take, nor shall he be requested by any other Party to take, a Future Action in connection with either the District or the HOA.

      12.    **ATTORNEY'S FEES, COSTS, AND EXPENSES.** Each of the Parties shall be responsible for the attorney's fees, costs, and expenses incurred by it or him in the Litigation.

      13.    **REPRESENTATIONS AND WARRANTIES OF RIGGS AND HERITAGE FFR.** As of the Agreement Date, Riggs and Heritage FFR represent and warrant Weltman, Phoenix, Highland, and NWJ as follows:

      a.    The execution and delivery of this Agreement does not and will not violate any provision of law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to Riggs or Heritage FFR, and will not result in any breach of or constitute any default under any indenture or loan or credit agreement or any

Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC;
Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman;
Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC

other agreement, lease or instrument to which Riggs or Heritage FFR is a party or by which he or it may be bound or affected;

       b.     Neither Riggs nor Heritage FFR has any present intention to file or acquiesce in any bankruptcy or insolvency proceeding at any time hereafter.

       c.     Each of Riggs and Heritage FFR has all requisite power and authority and is entitled to enter into this Agreement, and this Agreement has been duly executed and delivered and constitutes the valid and binding obligations of Riggs and Heritage FFR, enforceable in accordance with its terms, subject to the provisions of <u>Section 1</u> of this Agreement; and

       d.     Riggs intends to file the Riggs Plan as set forth in this Agreement and in the time period as set forth herein.

    14.    **REPRESENTATIONS AND WARRANTIES OF WELTMAN, PHOENIX, HIGHLAND, AND NWJ.** As of the Agreement Date, Weltman, Phoenix, Highland, and NWJ represent and warrant to Riggs and Heritage FFR as follows:

       a.     The execution and delivery by Weltman, Phoenix, Highland, and NWJ, or any of them, of this Agreement and any other document executed and/or delivered by them or any of them in connection herewith and the performance of their respective obligations hereunder, do not and will not violate any provision of law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to Weltman, Phoenix, Highland, and NWJ, or any of them;

       b.     Each of Phoenix and NWJ is incorporated or organized and existing under the laws of the State of Florida and is in good standing and is authorized to do business in the State of Florida, and Phoenix and NWJ have all requisite power and authority and are entitled to carry on their respective business as the same is now being conducted, as and in the places where such business is now conducted;

       c.     Highland is organized and existing under the laws of the State of Georgia and is in good standing; Highland has all requisite power and authority and is entitled to carry on its business as the same is now being conducted, as and in the places where such business is now conducted;

       d.     Each of Phoenix, Highland, and NWJ has taken all corporate action required to be taken by it or them to authorize the execution, delivery and performance of this Agreement; and

       e.     This Agreement has been duly executed and delivered by a duly authorized officer, manager, or member of Phoenix, Highland, and NWJ, and constitutes the valid and binding obligations of Phoenix, Highland, and NWJ, enforceable in accordance with its terms.

Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC;
Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman;
Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC

15.     **UNDERSTANDINGS OF THE PARTIES.**  The Parties have each read this
Agreement and fully understand its content and effect.  The Parties have had the advice and
counsel of their attorneys as to such content and effect, and the terms and provisions of this
Agreement have been explained to them by their attorneys.  The Parties each agree to and accept
each and all of the terms, provisions and conditions of this Agreement and do so voluntarily with
the full knowledge and understanding of the contents, nature and effect of this Agreement.

16.     **AGREEMENT NOT AN ADMISSION.**     This Agreement shall neither
constitute nor be construed as an admission by any Party as to any matter in dispute in the
Litigation or as evidencing in any way an admission of the truth or corrections of any claim or
defense asserted in the Litigation.  Each Party agrees not to state or imply otherwise to any third
party or in any other action.

17.     **CONFIDENTIALITY.**     The Parties agree that this Agreement and all
discussions or correspondence pertaining to the subject matter herein are to be treated as
settlement negotiations and shall therefore be inadmissible except in an action to enforce the
terms and conditions of this Agreement.  The Parties acknowledge that the Agreement shall be
presented to the Bankruptcy Court for approval.

18.     **NON-DISPARAGEMENT.**  The Parties voluntarily, knowingly and intelligently
consent and agree to be forever restrained, enjoined and prohibited from the following, whether
directly and/or indirectly, expressly including with respect to the prosecution of the Gibson
Litigation (hereinafter collectively referred to as the "Prohibited Activity"):

         a.     Making or causing others to make any public statements, oral, written,
including electronic transmission such as email, anonymously or otherwise, or soliciting, aiding,
abetting, encouraging or directing others to make any such statements, that concern the Parties
business dealings or the Litigation, as defined herein, including but not limited to all business
dealings related to SCDC and the Project, which regarding any subject, disparage, or, in any way
may harm the reputation of any of the Parties, or is intended to harm their reputation.

         b.     Ordering, commanding, directing, assisting, aiding or abetting, in any
manner whatsoever, any person(s), group, entity or thing to  engage in any conduct which
disparage, or, in any way may harm the reputation of any of the Parties, or is intended to harm
their reputation.

         c.     The Parties, for themselves, their heirs and assigns covenant and agree that
they shall not make or publish any written or oral statements or remarks in any forum including,
without limitation, remarks regarding any other party to this Agreement, which are or may be
disparaging, deleterious or damaging to the integrity, reputation, or good will of any other party
to this Non-Disparagement Agreement.

19.     **NOTICE AND CURE PROVISIONS.**  In the event any Party asserts that there
is a default under any provision of this Agreement, the Party shall provide the other Party notice
of the alleged default and the opportunity to cure said default within 14 days from the date of the



Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC;
Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman;
Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC

notice of the alleged default. Notice shall be provided to the alleged defaulting Party and
counsel for the alleged defaulting Party, and email notification shall be effective. Any disputes
regarding this Agreement shall be resolved by the Bankruptcy Court, except for disputes that
have specifically been designated to be resolved through binding arbitration.

20.    **PLAN SUPPORT AGREEMENT.**   As and when requested or otherwise
reasonably required by Riggs or Heritage FFR, each of Weltman, Phoenix, Highland, and NWJ
shall execute and deliver to Riggs and Heritage FFR Plan Support Agreements in form and
substance reasonably agreeable to the Parties and reasonably required by their respective
counsel.

21.    **SEVERABILITY.**  If any term of this Agreement, or the application thereof to
any person or circumstance, shall to any extent be invalid or unenforceable, then the remainder
of this Agreement, or the application of such term to persons or circumstances other than those as
to which it is invalid or unenforceable, shall not be affected thereby, and this Agreement shall
otherwise remain in full force and effect.

22.    **PRONOUNS.**  In this Agreement, the use of any gender shall be deemed to
include all genders and the use of the singular shall include the plural and the plural the singular,
as the context may require.

23.    **WAIVER.**  The failure or delay of any Party at any time to require performance
by another Party of any provision of this Agreement, whether such failure or delay be known or
unknown, shall not affect the right of such Party to require performance of the provision or to
exercise any right, power, or remedy hereunder at a later date, and any waiver by any Party of
any breach of any provision of this Agreement shall not be construed as a waiver of any
continuing or succeeding breach of such provision, a waiver of the provision itself, or a waiver of
any right, power, or remedy provided under this Agreement or at law or in equity. No notice to or
demand on any Party in any case shall, of itself, entitle such Party to any other or further notice
or demand in similar or other circumstances.

24.    **THIRD PARTIES.**  Nothing in this Agreement, whether express or implied, is
intended to confer any rights or remedies under or by reason of this Agreement on any persons
other than the Parties hereto and their respective successors and permitted assigns, nor is
anything in this Agreement intended to relieve or discharge the obligation or liability of any third
persons to any Party to this Agreement, nor shall any provision give any third person any right of
subrogation or action over or against any Party to this Agreement.

25.    **GOVERNING LAW AND VENUE.**   This Agreement and all transactions
contemplated by this Agreement shall be governed by and construed and enforced in accordance
with the internal laws of the State of Florida, without regard to principles of conflicts of laws.
The Parties agree that if any litigation should arise as a result of either party's breach of the terms
and conditions of this Agreement, or any exhibits attached hereto, then venue shall lie in such



courts as shall be vested with subject matter jurisdiction with respect to the terms of this Agreement, including, without limitation, the Bankruptcy Court.

26.    **ATTORNEY'S FEES AND COSTS.**  In the event a dispute shall arise between among the Parties to this Agreement related to or arising out of any breach or alleged breach of this Agreement, or any representation, covenant or warranty contained in this Agreement, and such dispute gives rise to any administrative proceeding, arbitration, court action or other legal process or proceeding, then, the prevailing Party in such dispute shall be entitled to reimbursement from the non-prevailing Party for all losses, damages, costs, liabilities or expenses reasonably incurred by the prevailing Party in furtherance of or defense of said action, process or proceeding, including, without limitation, reasonable attorney's fees, whether incurred in preparation for or conduct of trial, administrative or arbitration proceedings, appellate proceedings, or post-judgment proceedings (including, without limitation, proceedings to determine the entitlement to and amount of any award of attorney's fees).

27.    **AMENDMENTS.**  This Agreement may not be amended, modified, altered, or changed in any respect, except by a further agreement in writing duly executed by the Party against whom or which enforcement of thereof shall be sought.

28.    **HEADINGS AND CAPTIONS.**  The headings and captions of this Agreement are for convenience of reference only and in no way define, describe, extend, or limit the scope or intent of this Agreement or any provision hereof.

29.    **ENTIRE AGREEMENT.**  This Agreement shall constitute the entire agreement of the Parties with respect to the transactions contemplated under this Agreement.  All prior understandings and agreements had between the Parties with respect to the subject matter hereof are merged into this Agreement, which alone fully and completely expresses their understanding.

30.    **WAIVER OF JURY TRIAL.**  THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT ANY OF THEM MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY RELATING TO THE SUBJECT MATTER OF THIS AGREEMENT. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE PARTIES TO ENTER INTO THIS AGREEMENT.

31.    **COUNTERPARTS.**  This Agreement may be executed by the Parties hereto in multiple counterparts and each shall be considered an original insofar as the Parties hereto are concerned, but together said counterparts shall comprise only one agreement.

[COUNTERPART SIGNATURES BEGIN ON FOLLOWING PAGE]

Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC;
Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman;
Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC

31.    **COUNTERPARTS.**  This Agreement may be executed by the Parties hereto in multiple counterparts and each shall be considered an original insofar as the Parties hereto are concerned, but together said counterparts shall comprise only one agreement.

[COUNTERPART SIGNATURES BEGIN ON FOLLOWING PAGE]

[THIS SPACE INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF,** the Parties have executed this Agreement as of the Agreement Date.

Witnesses:                                                          **RIGGS:**

Printed Name: Dannielle M. Massey          **STEPHEN C. RIGGS, III**

Printed Name: Benjamin Kincaid

Witnesses:                                                          **HERITAGE FFR:**

Printed Name: Dannielle M. Massey          **HERITAGE FFR, LLC, a Florida limited liability company**

Printed Name: Benjamin Kincaid                By: _____
                                                                      Stephen C. Riggs, III
                                                              Its:    Manager

[SIGNATURES CONTINUE ON FOLLOWING PAGE]

16

Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC;
Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman;
Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC

17



Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC; Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman; Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC

Witnesses:

Printed Name: Jill K. Weltman

_____

Printed Name:_____

**SCDC:**

**SOUTHEASTERN CONSULTING & DEVELOPMENT COMPANY, INC.**, a Florida corporation

By: _____
    Louis Solomon Weltman
Its:    President

Witnesses:

Printed Name: Jill K. Weltman

_____

Printed Name:_____

**WELTMAN:**

_____
**LOUIS SOLOMON WELTMAN**

Witnesses:

Printed Name: Jill K. Weltman

_____

Printed Name:_____

**PHOENIX:**

**PHOENIX REALTY PARTNERS, INC.**, a Florida corporation

By: _____
    Louis Solomon Weltman
Its:    President

[SIGNATURES CONTINUE ON FOLLOWING PAGE]

[THIS SPACE INTENTIONALLY LEFT BLANK]

18

Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC;
Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman;
Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC

Witnesses:

_____
Printed Name: Jill K. Weltman

_____
Printed Name: _____

**HIGHLAND:**

**HIGHLAND LAND COMPANY, LLC**, a
Georgia limited liability company

By:    NWJ Gator Investments, LLC, a
       Florida limited liability company
Its:   Manager

       By: _____
           Louis Solomon Weltman
       Its:   Manager

Witnesses:

_____
Printed Name: Jill K. Weltman

_____
Printed Name: _____

**NWJ:**

**NWJ GATOR INVESTMENTS, LLC**, a
Florida limited liability company

By: _____
    Louis Solomon Weltman
Its:   Manager

[THIS SPACE INTENTIONALLY LEFT BLANK]

19

Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC; Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman; Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC

# EXHIBIT A

## LEGAL DESCRIPTION(S) OF CARTER PROPERTY

[To be provided]

Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC; Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman; Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC

## EXHIBIT B-1

## FORM OF CONVEYANCE

### (Deed)

This Instrument Prepared by and Return to:
**Scott M. Campbell**
Clark, Partington, Hart, Larry, Bond & Stackhouse
4100 Legendary Drive, Suite 200
Destin, Florida 32541

Property Appraisers Parcel Identification (Folio) Numbers:
104N23000000100000; 104N23000000090000; and 114N23000000020000

_____ *SPACE ABOVE THIS LINE FOR RECORDING DATA* _____

*THIS SPECIAL WARRANTY DEED,* made and executed the ____ day of _____, 20__ by **PHOENIX REALTY PARTNERS, INC.,** a(n) Florida corporation, having its principal place of business at _____ (hereinafter called the "Grantor") to _____, a(n) _____, whose mailing address is: _____ (hereinafter called the "Grantee"):
*(Wherever used herein the terms "grantor" and "grantee" include all the parties to this instrument and the heirs, legal representatives and assigns of individuals, and the successors and assigns of corporations)*

W I T N E S S E T H:    That the Grantor, for and in consideration of the sum of TEN AND 00/100s ($10.00) Dollars and other valuable considerations, receipt whereof is hereby acknowledged, hereby grants, bargains, sells, aliens, remises, releases, conveys and confirms unto the Grantee all that certain land situate in OKALOOSA County, State of Florida,
viz:

[INSERT LEGAL DESCRIPTION]

**Together with [LIST ASSOCIATED RIGHTS, EASEMENTS, ETC.].**

**Subject to easements, restrictions and reservations of record and to taxes for the year 20__ and thereafter.**

**TOGETHER,** with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

**TO HAVE AND TO HOLD,** the same in fee simple forever.

**AND,** the Grantor hereby covenants with said Grantee that except as above noted, at the time of delivery of this Special Warranty Deed the premises were free of all encumbrances made by them, and they will warrant and defend the same against the lawful claims of all persons claiming by, through or under Grantor.

[SIGNATURES APPEAR ON FOLLOWING PAGE]

Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC;
Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman;
Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC

**IN WITNESS WHEREOF,** the said Grantor has signed and sealed these presents the day and year first above written.

Signed, sealed and delivered in the presence of:

**PHOENIX REALTY PARTNERS, INC.,** a Florida
corporation

_____      By:_____
Witness #1 Signature                                                Louis Solomon Weltman
                                                              Its:      President

_____
Witness #1 Printed Name

_____
Witness #2 Signature

_____
Witness #2 Printed Name

**STATE OF FLORIDA**

**COUNTY OF OKALOOSA**

The foregoing instrument was acknowledged before me this _____ day of _____, 20__, by Louis
**Solomon Weltman, as President of Phoenix Realty Partners, Inc., a Florida corporation,** on behalf of the corporation.
He ( ) is personally known to me or ( ) has produced _____ as identification.

**SEAL**                                               _____
                                                         Notary Signature

                                                        _____
My Commission Expires:                                   Printed Notary Signature



Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC;
Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman;
Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC

## EXHIBIT B-2

## FORM OF CONVEYANCE

(Bill of Sale)

## BILL OF SALE AND ASSIGNMENT

**THIS BILL OF SALE AND ASSIGNMENT** (this "Bill of Sale") is made as of _____ __, 20__ (the "Effective Date"), by _____, a(n) _____ ("Assignor"), in favor of and to _____, a(n) _____ ("Assignee").  Capitalized terms used in this Bill of Sale and not otherwise defined herein shall have the meanings set forth in that certain Settlement Non-Disparagement, and General Release Agreement, dated as of February __, 2015.

## W I T N E S S E T H :

**WHEREAS,** Assignor has agreed to assign, transfer and convey to Assignee those certain assets as described on **Exhibit A** attached hereto and incorporated by this reference (the "Assets");

**NOW, THEREFORE,** in consideration of Ten and No/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor does hereby ASSIGN, TRANSFER, SET OVER, and DELIVER to Assignee the following:  (1) the Assets; and (2) all of Assignor's right, title and interest in and to (i) all assignable warranties and guaranties (express or implied) issued in connection with the Assets, and (ii) all transferable licenses, consents, permits and approvals of governmental, municipal or regulatory authorities issued in connection in with the Assets (collectively, the "Assigned Properties").  Assignor represents and warrants to Assignee that Assignor (i) is the owner of the Assigned Properties, (ii) has the full right to transfer the Assigned Properties, and (iii) has not previously transferred or assigned the Assigned Properties;

**TO HAVE AND TO HOLD** the Assigned Properties unto Assignee, its successors and assigns, forever, and Assignor does hereby bind itself and its successors to WARRANT AND FOREVER DEFEND, all and singular, title to the Assigned Properties unto Assignee, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof.

ASSIGNOR MAKES NO WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE IN RESPECT OF THE ASSIGNED PROPERTIES, AND THE SAME ARE TRANSFERRED IN "AS IS, WHERE IS" CONDITION, WITH ALL FAULTS. THE ASSIGNED PROPERTIES ARE BEING TRANSFERRED TO ASSIGNEE WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS, IMPLIED OR STATUTORY, EXCEPT AS PROVIDED HEREIN AND IN THE PURCHASE AGREEMENT.



Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC; Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman; Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC



Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC;
Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman;
Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC

**IN WITNESS WHEREOF,** Assignor has caused this Bill of Sale to be duly executed as of the
Effective Date.

Witnesses:                              **<u>ASSIGNOR:</u>**

_____               _____, a(n)
Name: _____               _____

_____               By: _____
Name: _____               Name: _____
                                        Its: _____



Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC;
Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman;
Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC

## EXHIBIT A TO BILL OF SALE

### <u>ASSETS</u>

[To be provided]



Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC;
Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman;
Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC

## EXHIBIT C

## FORM OF MUTUAL RELEASE

*Jill K. Weltman, an*
*individual (JKW), Nicole L.*
*Weltman, an individual (NLW)*
*and Jason M. Weltman, an*

## MUTUAL RELEASE

*individual*
*(JMW)*

THIS MUTUAL RELEASE ("Mutual Release") is made and entered into effective as of
_____ ___, 2015, by and among **STEPHEN C. RIGGS, III**, an individual ("Riggs"),
and **HERITAGE FFR, LLC**, a Florida limited liability company ("Heritage FFR") ("Riggs and
Heritage FFR shall be referred to as the "Riggs Parties"), and **SOUTHEASTERN
CONSULTING & DEVELOPMENT COMPANY, INC.**, a Florida corporation ("SCDC"),
**LOUIS SOLOMON WELTMAN**, an individual ("Weltman"), **PHOENIX REALTY
PARTNERS, INC., a Florida corporation** ("Phoenix"), **HIGHLAND LAND COMPANY,
LLC**, a Georgia limited liability company ("Highland"), and **NWJ GATOR INVESTMENTS,
LLC**, a Florida limited liability company ("NWJ") (Weltman, Phoenix, Highland and NWJ shall
be referred to as the "Weltman Parties") (each of the foregoing may be referenced herein
individually as a "Party" and together or collectively as the "Parties").

Preliminary Statement

The Riggs Parties and the Weltman Parties, along with SCDC, entered into that certain
Settlement Non-Disparagement, And General Release Agreement having an effective date of
February ___, 2015 (the "Settlement Agreement"). Capitalized terms used in this Mutual Release
and not otherwise defined in it shall have the meanings set forth in the Settlement Agreement.

The Settlement Agreement requires the execution and delivery of the Mutual Release.

NOW THEREFORE, for good and valuable consideration and the covenants and
agreements set forth in the Settlement Agreement, the receipt, adequacy and sufficiency of which
are hereby conclusively acknowledged, the Parties, intending to be legally bound, hereby agree
as follows:

## AGREEMENT

1.      Release by the Weltman Parties. The Weltman Parties hereby release the Riggs
Parties and SCDC, both individually and collectively, including their past, present and future
agents, representatives, shareholders, principals, attorneys, affiliates, affiliated entities, parent
corporations, subsidiaries, officers, directors, employees, attorneys, predecessors and successors
and heirs, executors and assigns, from any and all legal, equitable or other claims, counterclaims,
demands, setoffs, defenses, contracts, accounts, suits, debts, agreements, guaranties, loans,
actions, causes of action, sums of money, reckoning, bonds, bills, specialties, covenants,
promises, variances, trespasses, damages of whatever nature  or character, liquidated or
unliquidated, absolute or contingent, known or unknown, executions, judgments, findings,
controversies and disputes, and any past, present or future duties, responsibilities, or obligations,

Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC;
Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman;
Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC

from the beginning of the world to the date of this Mutual Release which arose, arises or is or was connected, in any way, out of (1) the SCDC Chapter 11 Case, (2) SCDC Adversary Proceeding; (3) the Control Case; and (4) the Riggs Case; (5) the Weltman Chapter 11 Case; and (6) the Phoenix Chapter 11 Case, and/or any other matters that are, were, could be or could have been the subject matter of those matters; provided, however, that this Mutual Release is not intended to include, and expressly excludes, any claims under or pursuant to the Settlement Agreement, which Settlement Agreement shall continue in full force and effect.

2.    Release by the Riggs Parties.    The Riggs Parties hereby release the Weltman Parties and SCDC, both individually and collectively, including their past, present and future agents, representatives, shareholders, principals, attorneys, affiliates, affiliated entities, parent corporations, subsidiaries, officers, directors, employees, attorneys, predecessors and successors and heirs, executors and assigns, from any and all legal, equitable or other claims, counterclaims, demands, setoffs, defenses, contracts, accounts, suits, debts, agreements, guaranties, loans, actions, causes of action, sums of money, reckoning, bonds, bills, specialties, covenants, promises, variances, trespasses, damages of whatever nature  or character, liquidated or unliquidated, absolute or contingent, known or unknown, executions, judgments, findings, controversies and disputes, and any past, present or future duties, responsibilities, or obligations, from the beginning of the world to the date of this Mutual Release which arose, arises or is or was connected, in any way, out of (1) the SCDC Chapter 11 Case, (2) SCDC Adversary Proceeding; (3) the Control Case; and (4) the Riggs Case; (5) the Weltman Chapter 11 Case; and (6) the Phoenix Chapter 11 Case, and/or any other matters that are, were, could be or could have been the subject matter of those matters; provided, however, that this Mutual Release is not intended to include, and expressly excludes, any claims under or pursuant to the Settlement Agreement, which Settlement Agreement shall continue in full force and effect.

3.    Counterparts.    This Mutual Release may be executed in any number of counterparts, all of which, taken together, shall constitute one and the same Mutual Release, and all of the signature pages may be attached to this Mutual Release as one document.

4.    Modification; Choice of Law; Gender and Number.    This Mutual Release may not be waived or changed except in a writing signed by the person(s) against whose interest such waiver or change shall operate.  This Mutual Release shall be governed by and construed under the laws of the State of Florida without regard to its choice of law principles.  All references to gender and number in this Mutual Release shall refer to each other gender and number, as the context requires.

5.    Legal Fees and Expenses.    Should any of the parties hereto institute any action or proceeding in court to enforce any provision hereof or for damages by reason of any alleged breach of any provision of this Mutual Release or for any other judicial remedy, the prevailing party shall be entitled to receive from the losing party all reasonable attorneys' fees and all court costs in connection with such proceeding.

Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC;
Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman;
Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC

6.    Severability.  If any term or other provision of this Mutual Release is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other conditions and provisions of this Mutual Release shall nevertheless remain in full force and effect.

7.    Authority.  The individuals executing this Mutual Release in any representative capacity on behalf of any of the Parties that are not natural persons expressly represent and warrant that they are fully authorized and empowered to execute this Mutual Release and to bind the Parties, respectively, to the terms of this Mutual Release.

8.    Successors.  This Mutual Release shall be binding upon and inure to the benefit of Parties and their respective successors and assigns.

[SIGNATURES BEGIN ON FOLLOWING PAGE]

[THIS SPACE INTENTIONALLY LEFT BLANK]

Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC;
Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman;
Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC

**IN WITNESS WHEREOF,** the parties have executed and delivered this Mutual Release
effective as of the date first set forth above.

Witnesses:                                            **RIGGS:**

_____        _____
Printed Name:_____          **STEPHEN C. RIGGS, III**

_____
Printed Name:_____

Witnesses:                                            **HERITAGE FFR:**

_____        **HERITAGE FFR, LLC, a Florida limited**
Printed Name:_____          **liability company**

_____        By:_____
Printed Name:_____                 Stephen C. Riggs, III
                                                Its:    Manager

[SIGNATURES CONTINUE ON FOLLOWING PAGE]

[THIS SPACE INTENTIONALLY LEFT BLANK]

Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC; Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman; Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC

Witnesses:                                              **SCDC:**

_____          **SOUTHEASTERN CONSULTING &**
Printed Name:_____          **DEVELOPMENT COMPANY, INC.,** a
                                                        Florida corporation

_____          By:_____
Printed Name:_____                Louis Solomon Weltman
                                                        Its:    President

Witnesses:                                              **WELTMAN:**

_____
Printed Name:_____          **LOUIS SOLOMON WELTMAN**

_____
Printed Name:_____

Witnesses:                                              **PHOENIX:**

_____          **PHOENIX REALTY PARTNERS, INC.,** a
Printed Name:_____          Florida corporation

_____          By:_____
Printed Name:_____                Louis Solomon Weltman
                                                        Its:    President

[SIGNATURES CONTINUE ON FOLLOWING PAGE]

[THIS SPACE INTENTIONALLY LEFT BLANK]

Settlement Agreement as of February 18, 2015, among Stephen C. Riggs, III; Heritage FFR, LLC; Southeastern Consulting & Development Company, Inc.; Louis Solomon Weltman; Phoenix Realty Partners, Inc.; Highland Land Company, LLC; and NWJ Gator Investments, LLC

Witnesses:                                    **HIGHLAND:**

_____              **HIGHLAND LAND COMPANY, LLC**, a
Printed Name:_____               Georgia limited liability company

_____              By:    NWJ Gator Investments, LLC, a
Printed Name:_____                      Florida limited liability company
                                             Its:    Manager

                                                     By:_____
                                                            Louis Solomon Weltman
                                                     Its:    Manager

Witnesses:                                    **NWJ:**

_____              **NWJ GATOR INVESTMENTS, LLC**, a
Printed Name:_____               Florida limited liability company

_____              By:_____
Printed Name:_____                      Louis Solomon Weltman
                                             Its:    Manager

